JOSLIN MANUFACTURING CO. *vs.* WALTER L. CLARKE, City Treasurer, *et al.*

JUNE 13, 1918.

PRESENT:    Parkhurst, C. J., Sweetland, Vincent, Baker, and Stearns, JJ.

*(1)    Constitutional Law.    Eminent Domain.    Water Supply.*

Pub. Laws, cap. 1278, "An act to furnish the city of Providence with a supply of pure water," is not obnoxious to Cons. U. S. Art. XIV of Amendments nor to Cons. R. I. Art. I, §§ 5 and 10.

*(2)    Constitutional Law.*

Cons. R. I. Art. I, § 10, applies only to persons accused of crime.

*(3)    Constitutional Law.*

Cons. R. I. Art. I, § 5, in view of its origin and history and its construction and application by the Court, has no bearing on questions raised in regard to condemnation proceedings, taken under Pub. Laws, cap. 1278, "An act to furnish the city of Providence with a supply of pure water."

*(4)    Constitutional Law.    Eminent Domain.*

While the question whether the purpose of a taking is a public one is judicial, the necessity and the proper extent of a taking is a legislative question.

*(5)    Constitutional Law.    Eminent Domain.    Compensation.*

When the power of eminent domain is exercised for the benefit of the State or a municipal corporation, if a remedy is provided against the State or municipality which is adequate and certain, it is not essential that payment should first be made before the taking by condemnation.

*(6)    Constitutional Law.    Water Supply.    Conditions.*

A provision in an act to furnish the city of Providence with a supply of pure water by which certain municipalities and water and fire districts located in the drainage district are given the right to take and receive certain limited amounts of water on certain terms and conditions, is reasonable and just, in providing for communities whose source of water supply has been taken away, for in securing to the city of Providence the advantage of the act the legislature has the power to impose reasonable conditions.

(7)  *Constitutional Law.  Interested Parties.*

Where in an act to furnish the city of Providence with a supply of pure water, provisions giving certain municipalities and water and fire districts located in the drainage district the right to take limited amounts of water on certain terms, are severable from the remainder of the act and are permissive in their nature and not obligatory upon the municipalities entitled to receive the water, the validity of such provisions can be determined later if questioned by anyone whose rights are affected, but before even the dam and reservoir are completed, complainants as taxpayers of the city of Providence have no such interest as will enable them to test the constitutionality of the provisions.

BILLS IN EQUITY.    Certified under Gen. Laws, 1909, cap. 298, § 1, for determination of constitutional questions.

STEARNS, J.    These are three bills in equity brought in the Superior Court by the Joslin Mfg. Co., The Scituate Light & Power Co., both Rhode Island corporations, and Theresa B. Joslin, a resident of Scituate and the owner of the majority of the stock of both of these corporations.

The Joslin Mfg. Co. owns and operates a number of mills in Providence and in Scituate in which are manufactured cotton yarn and boot and shoe lacings.    This company is also a taxpayer in the city of Providence.    The Scituate Light & Power Co. owns and controls certain water powers and privileges and real estate in Scituate and is engaged in the business of furnishing electricity for light, heat and power.    Theresa B. Joslin is an owner of real estate and a taxpayer in Scituate and the city of Providence.    The respondents are the City Treasurer of Providence and the individual members of the Water Supply Board of said city.

The bill in each of these causes alleges that certain provisions of Chapter 1278 of the Public Laws which is entitled "An Act to Furnish the City of Providence with a Supply of Pure Water" are in conflict with the provisions of Article XIV of the Amendments to the Constitution of the United States and the provisions of Section 5 and Section 10 of Article I of the Constitution of Rhode Island, and is brought

to enjoin the respondents, their agents and servants from taking possession of, or interfering with, the complainants' property under color of condemnation proceedings.

The respondents called to the attention of the Superior Court the fact that the constitutionality of an act of the General Assembly had been brought in question upon the record by the allegations of each of said bills, and the constitutional questions thus raised were certified, under Chapter 298, Section 1 of the General Laws of 1909, to this court for the determination of said constitutional questions.

The principal questions involved in each of these causes are the same and by agreement of the parties they were argued and are to be considered together.

By the provisions of the act in question a Board of Commissioners, to be known as the Water Supply Board of the City of Providence was appointed and established. This board was directed to determine whether a part of the north branch of the Pawtuxet river and the water shed tributary thereto would be the most available and desirable source for a supply of pure and wholesome water for the city of Providence and for any territories now supplied or hereafter supplied under the provisions of this act by means of the water works of said city, and if that source is approved said board is directed to make a plan locating a storage reservoir and an aqueduct therefrom to the city waterworks.

After making such a plan the board is authorized to purchase for the city any such land, water rights, etc., after the city council has made due provision for supplying the necessary funds to pay therefor.

By Section 5 the city of Providence is authorized to acquire by condemnation any lands and any interests in any lands "which are included within the area enclosed by the boundary line colored red on the accompanying plat marked, 'Plat of lands enclosed by red lines hereon, mostly in the town of Scituate, which may be taken by the city of Providence for water supply purposes, Samuel M. Gray, civil engineer, 1915,' a plat of part of said line at North Scituate

being also shown on the accompanying supplementary plat, entitled 'Map showing location of condemnation line at and near North Scituate, Samuel M. Gray, civil engineer, 1915' and which the city council of said city deems necessary for the location, construction, maintenance and operation of a reservoir or reservoirs, and any dams, sluices, culverts, water and land ways, and works connected therewith or incidental thereto," and also any lands and interests in any lands within said area which said city council deems necessary for protecting the waters in said reservoirs, river branch and its tributaries from pollution.

By Section 6 like power of condemnation of the waters above mentioned included in the designated area, and also of any water or flowage rights appurtenant to said area is granted to the city council.

The act also provides that whenever the city council shall pass any resolution to condemn any property under the act, it shall cause to be filed with the town or city clerk of each town or city in which any such property lies, a statement containing a description of the property taken, and that upon the filing of such statement, or plat in certain cases provided for, the title to the property condemned shall vest in the city of Providence in fee simple, unless a less estate is specified in said statement. After the filing of the statement the city may take possession of the property; provided, however, that it shall not take actual possession without the consent of the owner until after the expiration of one year from the date of the filing of the statement or plat.

If the owner of the property shall agree with the city upon its price, the same shall be paid to him forthwith by the city. In case of a failure to agree, the owner may, within one year after personal notice of the taking, or if he have no personal notice within two years from the date of the filing of the statement or plat, apply by petition to the Superior Court and have an assessment of damages by him sustained, determined by a jury, with the right to apply for a new trial for cause. Upon the entry of judgment execu-

tion shall be issued against the city therefor. Instead of claiming a jury trial for the assessment of damages, any owner may petition the Superior Court for the assessment of damages by a commissioner to be appointed by the court, the expense of such commission to be paid by the city.

The city is authorized when it takes actual possession of property, either by purchase or condemnation, to dispose of and cause to be removed any buildings or improvements thereon which would obstruct the work or should be removed to accomplish the purposes of the act.

The city is also authorized and empowered from time to time to hire and use all sums of money necessary to secure such water supply either by purchase or condemnation, and to issue its bonds and notes therefor and provision is made for the establishment of a sinking fund for the redemption of such obligations.

The right to condemn under the act is limited to the period of two years from the date of the passage of the act.

Pursuant to the provisions of the act, said water board prepared a description of the lands, etc., proposed to be taken, and a plat thereof, and submitted the same to the city council for action upon the proposal. The city council by resolution approved December 4, 1916, did elect to take and alleged that it took the certain lands, etc., therein described, and wherein were specified the nature and extent of the title and the purpose for which the same were taken. The said taking with certain exceptions, not here material, was in fee simple and included therein was certain property of the complainants. No question is now raised in regard to the regularity of the formal action by which the condemnation was effected.

(1) The complainants contend that said water supply act is unconstitutional and void in that it violates the provisions of Section 1 of the 14th Amendment to the Constitution of the United States and the provisions of Section 5 and Section 10 of Article I of the Constitution of Rhode Island in that under its provisions the complainants are deprived of their

property without due process of law for the reason that their property is allowed to be taken under color of eminent domain by the city of Providence acting under said act, when the questions of the necessity of the taking as a whole or the taking of the various parcels which are taken have not been decided by the legislature itself but have been relegated to the city of Providence to decide *ex parte* without appeal and without an opportunity to have said questions heard and decided by an impartial tribunal; also because the act permits the city of Providence to take possession of complainants' property and dispose of the same without offering any compensation therefor or having any value thereof determined before said taking; that it permits the taxpayers of the city of Providence to be burdened by a large and unnecessary expenditure which is not wholly for the benefit of said city but in part for the benefit of other municipalities or companies outside of said city which do not contribute to any portion of the expenditure for said water supply.

Section 10 of Article I provides that "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury; to be informed of the nature and cause of the accusation, to be confronted with the witnesses against him, to have compulsory process for obtaining them in his favor, to have the assistance of counsel in his defence, and shall be at liberty to speak for himself; nor shall he be deprived of life, liberty, or property, unless by the judgment of his peers, or the law of the land."

Section 10 has no bearing on the questions raised as it is settled that this section applies only to persons accused of crime. *East Shore Land Co.* v. *Peckham*, 33 R. I. 541 and cases cited therein.

Neither do we think that Section 5 of Article I of the Constitution of Rhode Island has any application to the questions in the case at bar.

Section 5 provides that, "Every person within this state ought to find a certain remedy, by having recourse to the

laws, for all injuries or wrongs which he may receive in his person, property, or character. He ought to obtain right and justice freely and without purchase, completely and without denial; promptly and without delay; conformably to the laws."

In *Perce v. Hallett,* 13 R. I. 364, this court held that a statute which prescribed entry and continuance fees for suits at law and in equity did not violate the provisions of Section 5, Article I. In speaking of this section, DURFEE, C. J., says: "The provision has a history which sheds light on its meaning. It was borrowed from Magna Charta. . . . In the light of both history and legislative practice, therefore, we think the legitimate conclusion is, that the declaration of the Constitution was intended to prohibit, not fees, like those prescribed in the fee table, but gratuities, or exactions, given or demanded for the direct purpose of influencing the course of legal proceedings."

Mr. Barrington in his treatise on Magna Charta, speaking of the original clause in Magna Charta, says that it relates to the jury system, and at page 344, says: "The custom of bringing presents to the king and paying him for the adjudication of cases undetermined before that court was one of the reasons that led to the insertion of the 40th chapter. By it the king was prevented from taking either money or presents for the granting of justice by his courts."

This court has passed upon Section 5 in the following cases. *Littlefield v. Peckham,* 1 R. I. 500; *Hudson v. Geary,* 4 R. I. 485; *In Re Joseph B. Nichols,* 8 R. I. 50; *Conley v. Woonsocket,* 11 R. I. 147; *Spalding v. Bainbridge,* 12 R. I. 244; *Perce v. Hallett,* 13 R. I. 363; *Henry v. Cherry & Webb,* 30 R. I. 13.

The cases referred to are mostly cases in which protection was sought under the provisions of Section 5 from statutes requiring litigants to pay certain fees in jury trials and on appeal and to furnish surety for the costs of suit. In view of the origin and history of Section 5 and its construction and application as above indicated it is clear that this section

has no bearing on the questions in regard to condemnation raised by the complainants in these cases.

Section 16 of Article I, Constitution of R. I. is as follows: "Private property shall not be taken for public uses, without just compensation." This is the specific provision in our constitution in regard to the subject of condemnation and there are a number of decisions of this court defining the rights of the parties under this section, in condemnation proceedings. As this section has heretofore been considered the safeguard in our State constitution of property rights in condemnation proceedings, it is significant that no claim is made by the complainants that the water supply act violates in any respect the inhibitions of this section, either in regard to the necessity or the extent of the taking, or the provisions for compensation. That the taking in this case is for a public use is admitted by the complainants.

We come now to the consideration of the contentions of the complainants that the act violates the 14th Amendment and particular objection is taken to the methods provided in the act for determining the necessity and extent of the taking authorized thereby.

In the recent case in the Supreme Court of the United States (March 4, 1918) of *John H. Sears, Appt.* v. *The City of Akron*, 246 U. S., 242, the facts as reported are as follows: The city of Akron is situated on the Little Cuyahoga river a short distance above its confluence with the Big Cuyahoga. In May, 1911, the legislature of Ohio granted to the city by special act "the right to divert and use from" for the purposes of its water supply "The Tuscarawas river, the Big Cuyahoga and Little Cuyahoga rivers and the tributaries thereto, now wholly or partly owned or controlled by the state." Subsequently the city by resolution of its council declared its intention to appropriate all the waters above a point fixed of the Cuyahoga river and its tributaries and thereafter by an ordinance it appropriated the same, directed its solicitor to apply to the courts to assess the compensation to be paid,

and provided for the payment of "the costs and expenses of said appropriation" out of an issue of bonds theretofore authorized. The city then constructed a dam and reservoir at the place specified and announced its intention of diverting the water before or by August 1, 1915. On July 24, 1915, John H. Sears, a citizen of New York who had a legal interest in the property in question, filed suit in the District Court of the United States, northern district of Ohio, praying that the further construction of the dam and reservoir and the diversion of the water of the river be enjoined. The complainant claimed that the act in question was contrary to and in violation of Section 10 of Article I of the Constitution of the United States and of the 14th Amendment thereto, in that it authorized a taking of private property by a municipality without any determination of the necessity for such taking other than the determination of the council of such municipality, which determination is made without any hearing and without the owners of such property having any opportunity to be heard; that the defendant was now proceeding, under color of authority of said statute, to take private property upon its own determination of the necessity for such taking when no such necessity in fact existed, and that the owner of the property rights involved was being deprived of its property without due process of law; that other sources of supply were available to the defendant for purposes of municipal supply and were adapted to that purpose and sufficient, if properly developed, to furnish an abundant supply of· water for the municipality and its inhabitants for many years to come; that the defendant was without funds and was financially unable to pay the damages caused to the owner, and that the defendant had not made any provision for raising or obtaining the money necessary to pay such damages and compensation. The defendant moved to dismiss the bill in the trial court because the bill stated no cause for equitable relief and because it did not appear therein that the defendant had committed or threatened to commit any unlawful act which had resulted or would

result in injury to the plaintiff. Certain other causes for dismissal were set forth which are not material in the case at bar. The case was dismissed in the District Court which held that the allegations with respect to the insolvency of the city of Akron, although technically admitted by the motion to dismiss, as a matter of fact were untrue and that the city was solvent and able to pay its obligations. The bill was dismissed in the District Court and on appeal to the Supreme Court ·the action of the lower court was affirmed. In the opinion, which was delivered by Mr. Justice Brandeis, the court says: "*Fourth:* Plaintiff contends that the ordinance is void because the general statute which authorized the appropriation violates both Article I, Section 10 of the Federal Constitution and the Fourteenth Amendment, in that it authorizes the municipality to determine the necessity for the taking of private property without the owners having an opportunity to be heard as to such necessity; that in fact no necessity existed for any taking which would interfere with the company's project; since the city might have taken water from the Little Cuyahoga or the Tuscarawas rivers; and furthermore that it has taken ten times as much water as it can legitimately use. It is well settled that while the question whether the purpose of a taking is a public one is judicial; *Hairston* v. *Danville & Western Railway*, 208 U. S. 598; the necessity and the proper extent of a taking is a legislative question." The court cites the following cases in support of this proposition: *Shoemaker* v. *United States*, 147 U. S. 282, 298; *United States* v. *Gettysburg Electric Ry. Co.*, 160 U. S. 668, 685; *United States* v. *Chandler-Dunbar Co.*, 229 U. S. 53, 65.

There is a striking similarity in many respects between the *Sears* case, *supra*, and the cases at bar and the decision of the Supreme Court, *supra*, gives a conclusive answer to the principal contentions of the complainants. In regard to the provision for compensation·it is to be noted that the complainants in this ·case have additional security to· that which was given under the Ohio act, in that provision is

made under the Rhode Island act that an execution for an award or upon a verdict for damages shall run against the city.

In *East Shore Land Co.* v. *Peckham, supra,* this court held that a similar provision for compensation in condemnation proceedings was not in violation of the State constitution; that when the power of eminent domain is exercised for the benefit of the State or a municipal corporation, if a remedy is provided against the State or municipality which is adequate and certain it is not essential that payment should first be made before the taking by condemnation.

(5) The complainants, the Joslin Co. and Theresa B. Joslin, as taxpayers in the city of Providence, question various provisions of the act and particularly Section 18 by which certain municipalities and water and fire districts which are located in the drainage district, are given the right to take and receive certain limited amounts of water on certain terms and conditions specified in the act. The provision thus made by the legislature for the communities whose source of water supply is taken away, in whole or in part, is reasonable and just and if the city of Providence desires to secure the advantage of the act it is clear that the legislature has the power to impose reasonable conditions upon the city. (6) These provisions are severable from the remainder of the act and their validity can be determined later if questioned by anyone whose rights are affected thereby. The provisions of Section 18 are permissive in their nature and not obligatory upon the municipalities who are entitled to receive the water. It is probable that in the future some, if not all of these rights will be exercised by the different communities, but the complainants however, at the present time, before even the dam and reservoir are completed, have no such interest in the provisions in question as will enable them to test the constitutionality of these provisions.

(7) In *City of Newport* v. *Horton,* 22 R. I. 196, this court affirmed the principle as stated in *State* v. *Snow,* 3 R. I. 64, that no one can take advantage of the unconstitutionality of an act

who has no interest in and is not affected by it.   The application of this principle disposes likewise of the objections to the provisions of the act in regard to special compensation for the cost of moving machinery, etc.

The act in question considered as a whole shows an intention on the part of the legislature to deal justly and fairly with the various parties in interest.   Alternative methods for the settlement of damages are provided and the provisions for the payment of damages are clear, certain and adequate.

Our decision is that Chapter 1278, Public Laws of Rhode Island, January Session, 1915, is not in violation of the provisions of Article XIV of the Amendments to the Constitution of the United States and the provisions of Article I, Section 5 and Section 10 of the Constitution of Rhode Island, as claimed by the complainants.

The papers in these cases with our decision certified thereon are ordered to be sent back to the Superior Court for further proceedings.

*Robert H. McCarter, J. Jerome Hahn, Francis I. McCanna, Alfred G. Chaffee,* for complainants; *Barney, Lee & McCanna, James Harris, Hahn & Joslin,* of counsel.

*Elmer S. Chace, City Solicitor, Albert A. Baker, Ira L. Letts, William A. Spicer,* of counsel, for respondents.