In the Matter of the Acquisition of Land by the CITY OF UTICA, in the Town of Marcy, New York, for the Purpose of Laying Out, Establishing, Equipping, Maintaining and Operating an Airport or Landing Field.

Supreme Court, Oneida County, February 21, 1929.

*Ernest E. De Rosa, First Assistant Corporation Counsel,* for the plaintiff.

*Searle & Searle [D. Francis Searle* of counsel], for the defendants.

DOWLING, WILLIAM F., J. By chapter 647 of the Laws of 1928 the Legislature amended article 14 of the General Municipal Law (as added by Laws of 1928, chap. 169) in relation to authorizing towns, villages and cities to establish, construct, improve, equip, maintain and operate airports or landing fields. This enactment became a law March 27, 1928. Section 350 of article 14, as amended by said chapter, provides that " The local legislative body of a city, * * * by resolution, may determine to establish, construct, equip, maintain and operate for such city, * * * an airport or landing field for the use of airplanes and other air-craft, and may direct an appropriate officer, board or body of such city * * * to acquire or lease for such purpose real property within such city * * * or within ten miles of the boundaries thereof * * *."

Section 351 of article 14, as amended by said chapter, provides that " Real property needed by a city, * * * for an airport or landing field shall be acquired, by purchase, if the city, * * * is able to agree with the owners on the terms thereof, and otherwise, by condemnation, in the manner provided by the law under which such city, * * * is authorized to acquire real property for public purposes, *other than street purposes,* or if there be no such law, in the manner provided for and subject to the provisions of the condemnation law."

On June 20, 1928, the common council of the city of Utica adopted an ordinance determining to lay out, establish, construct, equip, maintain and operate an airport or landing field in the town of Marcy, N. Y., on a site adjacent to and immediately west of the State Hospital grounds, and north of the Utica-Rome State highway, and said common council determined that it was necessary to appropriate for the said airport or landing field seven separate and distinct parcels of land, containing 354.43 acres, which said parcels adjoin each other.

Said ordinance authorized and directed the commissioner of public works and corporation counsel of the city of Utica to

negotiate with the owners of said properties for the purchase of the same and to report to the common council the result of such negotiations. Such ordinance further provided that the " Common Council does hereby determine that this improvement is of general benefit to the entire city of Utica and does hereby order and determine that·the entire cost and expense of this improvement be borne and paid for by the City of Utica."

Pursuant to the provisions of said ordinance, the commissioner of public works and corporation counsel opened negotiations with the owners of said real property and agreements were made with all of said owners for the purchase of said property, except the defendants herein, Antonio Lamanto and Mariana Lamanto, the owners of parcel No. 4, described in said ordinance, amounting to sixty-three and thirty-eight one-hundredths acres of land. The said officers and the said defendants were unable to agree upon a price which the city was willing to pay for said land. On July 11, 1928, the common council adopted an ordinance directing that application be made to the City Court of Utica, N. Y., for an order appointing commissioners to ascertain what damages the owners or occupants of the land to be taken for said airport would be entitled to receive. Application was made to said City Court for the appointment of commissioners to determine the damages which the defendants were entitled to on the condemnation of their said property. Objection was made by the defendants that said City Court had no jurisdiction to appoint commissioners, due· to the fact that said land was located outside of the city limits of the city of Utica. The proceeding was brought before the Supreme Court by appropriate proceedings and said objection was sustained by that court.

On January 2, 1929, the common council of the city of Utica adopted an ordinance rescinding said ordinance of July 11, 1928, and directing that a copy of the ordinance determining to lay out, establish, construct, equip, maintain and operate an airport be placed on file in the office of the city clerk of the city of Utica, together with a map of the proposed improvement, designating on such map the lands or parcels of real estate deemed necessary to be appropriated and showing the commencement and determination of the proposed improvement and that it is necessary to appropriate or acquire by condemnation proceedings for such purposes the real estate of the defendants herein. On the 9th of February, 1929, the city of Utica, by M. Jeremiah Cronin, its commissioner of public works, petitioned this court that it be adjudged that the public use requires the condemnation of the real property of the defendants herein, and that the plaintiff be entitled to take and hold

such property henceforth for the public use, upon making due compensation therefor to the owners thereof and that commissioners of appraisal be appointed to ascertain the compensation to be made to the owners of said property so taken. The defendants duly appeared and interposed an answer, *admitting,* viz., that Utica is a city of the second class; that the defendants are the owners of the real estate described, are in possession thereof; that the same is located within ten miles of the city of Utica; that the common council of the city of Utica, on the 20th of June, 1928, duly passed an ordinance authorizing and directing the commissioner of public works and the corporation counsel to negotiate with the owners of the aforementioned properties; that, after negotiations with the defendants, the said city has been unable to agree with them in regard to the value of their said property; that the city claims that said property should be sold for its market value and that the defendants demand a price far in excess of the same.

Further answering, the defendants deny each and every other allegation of the petition. Defendants, for a defense, allege that the city of Utica has already acquired sufficient and appropriate land for all the airport needed by it; that it is and has been, for several months, operating an airport and landing field for airplanes and other aircraft and has the same equipped and in use, and that the land already possessed by the city of Utica is sufficient for all present municipal public use in that regard.

Upon the argument the defendants contended that the petition does not state facts sufficient to entitle plaintiff to a judgment of condemnation; that it does not state facts showing any necessity for the acquisition of defendants' land, or the public use for which it is required, or that the city has not all the land needed for a municipal airport for public use at the present time. Defendants further contend that the common council is not the judge of the amount of land needed.

The petition is not by any means replete with facts and it is difficult to determine, without a close study and analysis, just what facts are contained in the petition. No map of the proposed airport field is attached to the petition. The petition contains a description of the seven parcels making up the proposed field by metes and bounds and their location as required by subdivision 2 of section 4 of the Condemnation Law. By plotting out the parcels from the description, it appears that parcel No. 4, belonging to the defendants, is located in the center of the proposed field. It is bounded upon the east by parcels Nos. 1 and 3, on the north by parcel No. 2, on the west by parcel No. 5, and on the south by a highway. In order to have a serviceable field, it is necessary

that the city acquire the defendants' property. The petition sets forth the public use for which the property is desired. The Court of Appeals has recently held that the acquiring of an airport is a proper municipal undertaking and the land acquired therefor serves a legitimate public use.

The defendants contend that the common council is not the judge of the amount of land needed; that no such authority is conferred upon that body by the Airport Law (Gen. Mun. Law, art. 14, added by Laws of 1928, chap. 169, as amd. by Laws of 1928, chap. 647). They contend also that the court is the judge as to whether or not it is necessary to take the defendants' property for the said airport purposes. They cite, in support of this contention: Condemnation Law (§ 4, subd. 3); *Matter of Meagher* (35 Misc. 601); *Matter of City of Rochester* (184 App. Div. 369, 373; affd., 224 N. Y. 659). In this contention the defendants err. These decisions are overruled in *Matter of City of Rochester* v. *Holden* (224 N. Y. 386), where the court held (at pp. 390, 391): " The respondents assert and argue that the empowerment of the common council to conclusively determine that lands, which are without the city, are necessary for municipal purposes violates the provision of the Federal Constitution that no person shall be deprived of property without due process of law. (Articles 5, 14.) In this they err. Whether the public exigency requires the taking of private property for public use is a legislative question, the determination of which by the legislature is, generally speaking, final and conclusive. Whether the use for which such taking is authorized is a public use is a judicial question for the determination of the court. That the taking, in the instant case, is for a public use is not denied. The legislature has the right to designate officers, bodies or tribunals to determine the question of exigency or necessity. The territorial limitations of the general authority or jurisdiction of the designated tribunal is immaterial. The state has the inherent power to take the private property it requires for the use of the public, wherever it may be located, and in the taking may act directly or through a local agency authorized to exercise its power in whole or in part. (*Board of Water Commissioners* v. *Johnson*, 86 Conn. 151; *Sears* v. *City of Akron*, 246 U. S. 242; *Joslin Manufacturing Co.* v. *Clarke*, *103 Atl. Rep. 935 [Supreme Court of Rhode Island, June, 1918]; *Matter of Application of Fowler*, 53 N. Y. 60; *People ex rel. Herrick* v. *Smith*, 21 N. Y. 595.) The action of the common council, in determining the question of necessity, was within the authority inherent in and lawfully delegated by the

* 41 R. I. 350.

state to it and was conclusive. The provision of the charter under consideration is valid."

In the *Holden* case the city of Rochester sought to condemn land outside of the city for the protection of its water supply. It proceeded under sections 266 and 268 of its charter (Laws of 1907, chap. 755). Said sections are as follows:

"§ 266. Power to acquire real estate for water supply.— The city may acquire title to real estate, waters, lakes, springs, ponds or streams, or any right or easement therein, which may be necessary for the purposes of the water works of said city, or to protect the sources of water supply from pollution; and may enter upon, control and use the waters of Canadice and Hemlock Lakes for the purpose of procuring a water supply; and has also the power to raise the surface of said lakes not to exceed two feet, and to draw down said water below low water mark not to exceed eight feet; and has the power to take such measures and make such constructions as may be necessary to secure said waters for the purpose intended and to protect the same from improper obstructions or pollution from any cause."

"§ 268. Manner of acquiring real property for water works purposes.— When real estate, or rights or easements therein, or property rights are taken for water works purposes, such real estate, or rights or easements therein, or property rights must be acquired in the same manner as is provided herein for the acquisition of other real property."

The Court of Appeals held that the action of the common council in determining the question of necessity as to acquiring the land sought was within the authority lawfully delegated by the State to it and was conclusive. Sections 266 and 268 of said charter are not dissimilar to sections 350 and 351 of article 14 of the General Municipal Law, as amended by chapter 647 of the Laws of 1928, as above set forth.

Defendants further contend that the petition does not show that the board of estimate and apportionment of the city of Utica approved of the action of the common council in respect to such airport, as required by section 353 of article 14 of the General Municipal Law, as amended by chapter 647 of the Laws of 1928. Paragraph 9th of the petition states " that all the preliminary steps required by law have been taken to entitle your petitioner to institute these proceedings."

Furthermore, the notice attached to the petition herein, published pursuant to the said ordinance of January 2, 1929, recites the approval thereof by the said board of estimate and apportionment.

The only allegation of the petition that the answer really puts

in issue is the passage of the ordinance of January 2, 1929. The adoption of this ordinance was not necessary to the maintenance of this proceeding. Such an ordinance is only necessary where the city takes lands for street improvement. Section 351 of article 14 of the General Municipal Law, as amended by chapter 647 of the Laws of 1928, provides that condemnation proceedings of the character in question shall be conducted in the manner provided by the law under which the city is authorized to acquire real property for public purposes *other than street purposes.* The charter of the city of Utica contains a complete scheme for condemnation of land for street purposes. Section 21 of the General City Law (as amd. by Laws of 1913, chap. 247) grants certain specific powers to cities but does not provide a scheme for condemning lands for the purpose in question. This being the case, the city must necessarily proceed under the Condemnation Law.

The answer, therefore, puts in issue no material fact and the plaintiff is entitled to a judgment of condemnation and the appointment of commissioners.

Section 12 of the Condemnation Law makes the provisions of article 9 of the Civil Practice Act applicable to proceedings of this character so far as the supplying of mistakes, omissions, defects and irregularities are concerned. The petition herein is composed largely of conclusions instead of facts. Omissions, in this respect, can and may be supplied by the plaintiff. The plaintiff has leave to further amend the petition by attaching thereto a map of the proposed airport tract, showing the location thereon of the defendants' property and it may also further amend the petition by attaching thereto the resolution of the board of estimate and apportionment approving of the action of the common council in respect to said airport site, and on the making of such amendments defendants' preliminary objections will be overruled.

The learned counsel for the defendants contends that freeholders of the city of Utica are disqualified from acting as commissioners in this proceeding, and cites in support of that contention *County of Orange* v. *Storm King Stone Co.* (191 App. Div. 329). His contention in this respect would be valid were it not for the fact that said case was reversed in the Court of Appeals (229 N. Y. 460). The Court of Appeals held that the words " disinterested " and " competent freeholders " as used in the Condemnation Law, in its provisions for the appointment of appraisers in condemnation proceedings, mean a disinterestedness and a competency like that of a juror or a judge, and, therefore, in such proceeding an owner of realty and a taxpayer of the subdivision in which the condemned property is located is a disinterested person and qualified to act as a commissioner in condemnation proceedings.

The plaintiff, therefore, is entitled to judgment adjudging that the condemnation of the real property described in the petition is necessary for the public use, and that the plaintiff is entitled to take and hold the property for the public use specified upon making compensation therefor and plaintiff is entitled to the appointment of three disinterested and competent freeholders as commissioners to ascertain the compensation to be made to the defendants for the property to be taken for the public use above specified.

Judgment accordingly.