# SEARS, TRUSTEE, *v.* CITY OF AKRON.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES
FOR THE NORTHERN DISTRICT OF OHIO.

No. 105.   Argued January 21, 22, 1918.—Decided March 4, 1918.

Mere incorporation and organization under the general laws of Ohio
  (Gen. Code, 1910, §§ 10128–10134,) with power to construct and
  operate a hydro-electric power system at places designated in the
  certificate and to take water rights and riparian property for that
  purpose, does not imply a contract between the State and the com-
  pany that the supply of water available shall not be diminished.
  Hence, a subsequent appropriation of the water by a city, acting
  under state authority, which involves no taking of property acquired
  by the company by purchase or condemnation under its charter,
  does not operate to impair the obligation of the charter.
Even if such a contract could be implied, an act of the legislature ex-
  pressly authorizing such appropriation by the city should be treated
  as an exercise of the State's power to amend the company's charter,
  reserved by Art. XIII, § 2, of the Ohio constitution, and as revoking
  or modifying the contract by subordinating the company's right to
  the right of the city.
A hydro-electric company, organized under the general laws of Ohio
  with power of condemnation, adopted, through its board of directors,
  a plan of development involving the acquisition of the waters of a
  stream, with riparian land, and began certain condemnation pro-
  ceedings, but never commenced construction work, and acquired
  none of the land until after the legislature had authorized a city to
  appropriate the water and the city, under an ordinance, had made
  the appropriation and practically constructed its works for using it.
  *Held*, that whatever preference the company may have gained under
  the general laws of the State, as against rival corporations and
  municipalities, its right of appropriation, no property having been
  acquired under it, was subject to the State's reserved power ex-
  erted by the act of the legislature, and that the appropriation for
  the city was not an unconstitutional taking of the company's
  property.
A state statute *held* not to violate Art. I, § 10, of the Constitution, or
  the Fourteenth Amendment, in authorizing a city to determine,

without hearing the necessity and extent of an appropriation of private property for its public purposes.

An ordinance for the creation of a waterworks system and supply, adopted by the city council of Akron, to take effect September 10, 1912, pursuant to Ohio Gen. Code, 1910, §§ 3677–3697, was not repealed by the constitution adopted September 3, 1912, providing for a referendum in such cases, Art. XVIII, § 5, since the constitution did not become effective until November 15, 1912, when the ordinance was a valid, existing law, and the fact that no action may have been taken under the ordinance is immaterial.

Where there is no direct taking under the power of eminent domain, a riparian owner complaining of the act of a city in damming and diverting a stream for a municipal water supply will be remitted to his action at law for damages, unless the injury is clear and exceptional circumstances are present warranting resort to equity.

General allegations of fraud and insolvency *held* not to supply the absence of facts entitling plaintiff to equitable relief.

Affirmed.

THE case is stated in the opinion.

*Mr. George W. Wickersham,* with whom *Mr. Carroll G. Walter, Mr. William Z. Davis* and *Mr. Thomas F. Tracy* were on the briefs, for appellant.

*Mr. John E. Morley,* with whom *Mr. Scott Kenfield, Mr. Thos. H. Hogsett* and *Mr. Sheldon H. Tolles* were on the brief, for appellee.

*Mr. William Z. Davis,* by leave of court, filed a brief as *amicus curiæ* on behalf of the Cuyahoga River Power Co.

MR. JUSTICE BRANDEIS delivered the opinion of the court.

Akron, Ohio, lies on Little Cuyahoga River a short distance above its confluence with the Big Cuyahoga. In May, 1911, the legislature of Ohio granted to the city, by special act "the right to divert and use forever" for

the purposes of its water supply "the Tuscarawas river, the big Cuyahoga and little Cuyahoga rivers, and the tributaries thereto, now wholly or partly owned or controlled by the state." [1]  The city already possessed, under the general laws of Ohio, power to appropriate for this purpose, by condemnation proceedings, the property of any private corporation. [2]  Acting specifically in exercise of the power conferred by the special act and of every other power thereunto enabling, the city, by resolution of its council, passed May 27, 1912, declared its intention to appropriate all the waters, above a point fixed, of the Cuyahoga River and tributaries; and by an ordinance, passed August 26, 1912, it appropriated the same, directed its solicitor to apply to the courts to assess the compensation to be paid, and provided for the payment of "the costs and expenses of said appropriation" out of an issue of bonds theretofore authorized.  The city then con-

---

[1] Act (House Bill No. 357) of May 17, 1911, Ohio Laws, vol. 102, p. 175:

An act to provide for granting to the city of Akron, Ohio, the right to use and occupy certain waters and lands of the state for waterworks and park purposes.

Section. 1. That there is hereby granted to the city of Akron, in the County of Summit, and state of Ohio, the right to divert and use forever for the purpose of supplying water to said city of Akron and the inhabitants thereof, the Tuscarawas river, the big Cuyahoga and little Cuyahoga rivers, and the tributaries thereto, now wholly or partly owned or controlled by the state and used for the purpose of supplying water to the northern division of the Ohio canal, provided, however, and this grant is upon the condition that at no time shall said city use the waters of any such stream, to such extent or in such manner as to diminish or lessen the supply now necessary, to maintain the flow in and through the canal as said canal now exists or as hereafter may become necessary for navigation purposes for an enlarged canal and upon the further condition that the city of Akron shall at all times save the state harmless from all claims arising from such grant and construction thereunder.

[2] General Code of Ohio (1910), §§ 3677–3697.

structed a dam and reservoir at the place specified and announced its intention of diverting the water before or by August 1, 1915.

On July 24, 1915, John H. Sears, a citizen of New York, filed in the Federal District Court for the Northern District of Ohio this suit, praying that the further construction of dam and reservoir and the diversion of the water of the river be enjoined, and alleged, in substance, the following facts: The Cuyahoga River Power Company, a hydro-electric corporation, was organized under the general laws of Ohio,[1] in 1908. The character of the company's enterprise is described in *Cuyahoga River Power Co.* v. *Northern Realty Co.*, 244 U. S. 300; and its possible rights were considered in *Cuyahoga River Power Co.* v. *Akron*, 240 U. S. 462. On July 15, 1915, the company de-

---

[1] Now General Code of Ohio (1910), §§ 10128–10134.

The bill recites:

"Said corporation was formed for the purpose of acquiring, erecting, building, maintaining and operating dams in the Cuyahoga River in the State of Ohio to raise and maintain a head of water; of constructing and maintaining canals, locks and raceways to regulate and carry said head of water to any plant or power house where electricity is to be generated; of erecting and maintaining a line or lines of poles whereon to attach or string wires or cables to carry and transmit electricity; of acquiring, producing, manufacturing, generating and selling electricity for light, heat, power and other purposes; of acquiring, holding and selling franchises and privileges to supply the same to municipal corporations; of acquiring by condemnation, lease, purchase or otherwise, and of possessing, holding and selling such real estate and personal property as may be necessary or convenient for the proper conduct of said business, and of doing any and all things necessary and incident to any of said purposes.

"The original articles of incorporation of said company provided that the improvements of said company should begin at the confluence of the Big Cuyahoga River and the Little Cuyahoga River below the City of Akron, Summit County, Ohio, and extend along said Big Cuyahoga River through the County of Summit to a point where said Big Cuyahoga River crosses the line between Summit and Portage Counties."

livered to him as trustee a deed of trust of all its property
to secure an issue of $150,000 of bonds. The property
rights or interests which it is alleged the city was about
to appropriate and for which it had not paid and pro-
posed not to pay, arose from these transactions of the
company:

It caused to be made and had, on or about June 3, 1908,
adopted by resolution of its board of directors, surveys,
maps and plans known as the "Roberts-Abbot Plan."
Later it caused to be made and, about April 23, 1909,
adopted by resolution of its board of directors, supple-
mental surveys, maps and a plan, known as the "Von
Schon Plan," together with description of the several
parcels of land required for carrying it out. The first plan
provided for development, on the Big Cuyahoga, above
the confluence of the Big and Little Cuyahoga rivers,
within the limits of the location and plan of development
set forth in its certificate of incorporation; and the papers
also described the various parcels of land which the com-
pany would require for the purpose. The supplemental
plan called for an extensive development including most
of the rivers of northeastern Ohio, and provided, among
other things, for a dam on the Big Cuyahoga above that
of the city. It was confessedly beyond the powers con-
ferred by the original certificate of incorporation. That
certificate was not amended to include the necessary ad-
ditional powers until after the passage of the Act of 1911.
No public record or filing was made of either of those
plans; and the law of Ohio makes no provision for such
filing or for any record except that involved in condem-
nation proceedings. No condemnation proceeding was
taken except that instituted June 5, 1908, under the orig-
inal plan. It does not appear that any property was ac-
quired under these proceedings. Shortly before the com-
mencement of this suit, the company acquired, at a point
some distance below the city's dam, a small parcel of

land, which, however, extended only to high-water mark. It also acquired, at another place below defendant's dam from another riparian owner, a contract for a portion of the river bed and the right to regulate, as to this land, the flow of the river; and acquired options for certain other properties. But the company has not commenced anywhere on the river any part of the proposed water-power development.

The right of property which the bill seeks to protect is mainly, if not wholly, the alleged right to construct and operate, in places designated in the certificate of incorporation, the power system described, without danger of impairment by any act of defendants. The bill alleges that the company "became possessed of and vested with the right to exercise the State's power of eminent domain in order to appropriate and acquire for its own corporate purposes such private property as it deemed necessary for carrying out and performing the matters and things set forth in its said articles of incorporation;" and that the city's proposed action would impair contract rights of the company and also take its property without compensation in violation of the Federal Constitution. The city moved to dismiss the bill, contending that it did not appear from plaintiff's allegations that any contract rights of the company had been impaired or that the city had taken or used, or threatened or proposed to take or use, any property of the company; that, on the contrary, the bill showed that the company had no property right which the city's action, taken or proposed, would involve appropriating; and that, for this reason, it had refrained from including in the condemnation proceedings instituted by it any alleged property rights of the company, and had not given to it any notice of the city's takings.

The motion to dismiss the bill was sustained by the District Court, on the ground that the company did not possess any such contract right or property as the city

was alleged to have impaired or invaded or threatened to appropriate; and also on the ground that the bill did not set forth facts entitling plaintiff to seek relief in equity and did disclose laches. A decree was entered dismissing the bill; and a direct appeal to this court was taken under § 238 of the Judicial Code.

*First:* As to the alleged impairment of contract: Plaintiff contends that the incorporation of the company in 1908 under the general laws constituted a contract by which the State granted it the right to construct and operate a power system in the places designated in the certificate and the right to take property for that purpose and to have the water flow past that property uninterrupted and undiminished; and that the ordinance of 1912 is a law which impairs that contract in violation of Article I, § 10, of the Federal Constitution. It is clear that the contract right created by incorporation alone was not illegally impaired by the ordinance, because there was no contract by the State with reference to the water rights. Incorporation did not imply an agreement that the quantity of water available for development by the company would not be diminished. *St. Anthony Falls Water Power Co. v. St. Paul Water Commissioners,* 168 U. S. 349, 371. The so-called charter simply conferred upon the company the power to take lands necessary for, and to construct thereon, the dams, locks, and other parts of its plant.[1] If by purchase or by right of eminent do-

---

[1] General Code of Ohio (1910):

"Section 10128. Any company or companies organized for the purpose of erecting or building dams across rivers or streams in this state to raise and maintain a head of water, or for constructing and maintaining canals, locks, and race-ways to regulate and carry such head of water to any plant or power house where electricity is to be generated, or for erecting and maintaining a line or lines of poles whereon to attach or string wires or cables to carry and transmit electricity, or for transporting natural gas, petroleum, water or electricity, through

main under the charter powers the company becomes the owner of riparian lands, it acquires the riparian rights of former owners; or it may otherwise acquire from the owners specific rights in the use and flow of the water. But these would be property acquired *under* the charter, not contract rights expressed or implied in the grant of the charter. Furthermore, the contract inhering in the charter (as distinguished from property acquired under the charter) was subject to the State's reserved power to amend or repeal, as provided in Art. XIII, § 2, of the Ohio constitution. *Ramapo Water Co.* v. *City of New York*, 236 U. S. 579, 583. The Act of 1911, under which the city proceeded, may be treated as an amendment of the company's charter making its rights subject to those of the city, if that is necessary to justify the proceeding of the city, which the act authorized. See *State* v. *City of Hamilton*, 47 Ohio St. 52, 74; *Hamilton Gas Light Co.* v. *Hamilton City*, 146 U. S. 258; *Berea College* v. *Kentucky*, 211 U. S. 45, 57.

*Second:* As to the alleged property rights: It follows from what has been said above, that at least until something more had occurred than incorporation, the city was free as against the Cuyahoga Company to appropriate

---

tubing, pipes or conduits, or by means of wires, cables or conduits, or for storing, transporting or transmitting water, natural gas or petroleum, or for generating and transmitting electricity, may enter upon any private land for the purpose of examining or surveying a line or lines for its tubing, pipes, conduits, poles and wires, or for a reservoir, dams, canals, race-ways, plant or power house, and for ascertaining the number of acres overflowed by reason of the construction of such dam or dams, and may appropriate so much thereof as is deemed necessary for the laying down or building of such tubing, conduits, pipes, dams, poles, wires, reservoir, plant and power house, as well as the land overflowed, and for the erection of tanks and reservoirs for the storage of water for transportation and the erection of stations along such line or lines, and the erection of such building as may be necessary for the purpose aforesaid."

any of the land or any of the water rights which might otherwise have come under the development described in its certificate of incorporation. Plaintiff contends, however, that it became vested with an indefeasible property right to proceed with its development (a) when by resolution the board of directors adopted the plan or (b) when condemnation proceedings were begun. Whether the adoption of a plan by the company would, under the general laws of Ohio, have vested in it such a preferential right as against rival power companies or other municipalities, we have no occasion to consider. For it is clear that Ohio retained the power as against one of its creatures, to revoke any such right to appropriate property until it had been acted upon by acquiring the property authorized to be taken, *Adirondack Ry. Co.* v. *New York State,* 176 U. S. 335; and the Act of 1911 and the ordinance were both passed before the company had acquired any property. Nor are we called upon to determine to what extent the commencement of the acquisition of needed property in preparation for the power development, or even actual commencement of construction, would have vested in the company the right to complete the development. For the property alleged to be now owned by the company was not acquired by it until after the city's development had been practically completed; and no work of construction has ever been commenced by the company.

*Third:* As to the alleged riparian rights: These consist of (a) the small parcel of land extending to high-water mark, which was acquired nearly three years after the ordinance of August 26, 1912, was passed; and (b) a contract with one Boettler for a portion of the river bed with a right to regulate flowage; and (c) certain options for other lands and rights, all of which also seem to have been acquired after the city's water development was practically completed. The city insists that the bill fails to show that it has taken or proposes to take or will injure

any of these, and also that it does not appear that the company has, in respect to any of these properties, any riparian right which conceivably could be taken or injured. This contention, which involves matters of state law, may possibly raise some questions presented to the state courts in *Boettler* v. *Akron,* 93 Ohio St. 490. But whether it is in all respects sound, we need not determine; for it is clear that, upon the facts alleged in the bill, the rights of the plaintiff in this property and the injury thereto, if any, are not such as to entitle him to relief in equity.

*Fourth:* Plaintiff contends that the ordinance is void because the general statute which authorized the appropriation violates both Article I, § 10, of the Federal Constitution and the Fourteenth Amendment, in that it authorizes the municipality to determine the necessity for the taking of private property without the owners having an opportunity to be heard as to such necessity; that in fact no necessity existed for any taking which would interfere with the company's project, since the city might have taken water from the Little Cuyahoga or the Tuscarawas rivers; and furthermore that it has taken ten times as much water as it can legitimately use. It is well settled that while the question whether the purpose of a taking is a public one is judicial, *Hairston* v. *Danville & Western Ry. Co.,* 208 U. S. 598; the necessity and the proper extent of a taking is a legislative question. *Shoemaker* v. *United States,* 147 U. S. 282, 298; *United States* v. *Gettysburg Electric Ry. Co.,* 160 U. S. 668, 685; *United States* v. *Chandler-Dunbar Water Power Co.,* 229 U. S. 53, 65. The legislature may refer such issues, if controverted, to the court for decision. *P. C. C. & St. L. Ry. Co.* v. *City of Greenville,* 69 Ohio St. 487.

*Fifth:* As a further ground for relief, plaintiff asserts that the whole water development of the city has been carried on without authority in law. The contention is, that the general statute on which the ordinance rests is

inconsistent with the new constitution, adopted September 3, 1912; that though the ordinance was passed before the new constitution took effect, it was not acted upon until after; and that therefore it was not within the saving clause and was repealed. Inconsistency is asserted for the reason that under the statute the city council possessed the full power to determine whether the city should undertake the water development, whereas the new constitution provided a right to a referendum on the subject, upon filing, within thirty days from the passage of the ordinance, a petition "signed by ten percentum of the electors of the municipality." Article XVIII, § 5. The bill alleges that the ordinance did not take effect until September 10, 1912; but the new constitution did not become effective until November 15, 1912. The ordinance was, therefore, a valid existing law when the new constitution became operative and was not repealed by it. The fact that no action may have been taken under the ordinance is immaterial. We need not, therefore, enquire whether plaintiff is in a position to avail himself of the alleged inconsistency.

*Sixth:* The city insists that it has not appropriated and does not intend to appropriate any property of plaintiff, and that, as to plaintiff, it is not exercising the power of eminent domain. If, as plaintiff contends, the city's whole water development is unauthorized, plaintiff clearly is not entitled to equitable relief. For then, the city's act in damming and diverting water would be that of an ordinary wrongdoer, for which riparian proprietors above or below, who are injured, would have only the usual remedy for a tort by an action at law for damages, unless exceptional circumstances render resort to a court of equity appropriate. *Parker* v. *Winnipiseogee Lake Cotton & Wollen Co.,* 2 Black, 545; *Osborne* v. *Missouri Pacific Ry. Co.,* 147 U. S. 248, 259. No such circumstances exist here. The bill shows clearly that, at least for the present;

the company cannot, by any conceivable diversion, be injured in any riparian properties and rights it may have; for it has not even commenced the construction of its projected power system, nor otherwise utilized the small parcel which it acquired shortly before this suit was instituted. Even if the company had riparian rights and should hereafter proceed with its development it might prove that defendant's diversion was of such a character that it would not substantially affect the company's use, *McElroy* v. *Goble*, 6 Ohio St. 187; or the circumstances might conceivably be such that the city would be held not to have exceeded its legal rights as riparian owner. *City of Canton* v. *Shock*, 66 Ohio St. 19; *Moody & Thomas Milling Co.* v. *City of Akron*, 93 Ohio St. 484; *Cleveland-Akron Bag Co.* v. *City of Akron*, 93 Ohio St. 486.

The absence of facts entitling plaintiff to equitable relief is not supplied by such general allegations of fraud and insolvency as the plaintiff has made.

*Decree affirmed.*

MR. JUSTICE DAY and MR. JUSTICE CLARKE took no part in the consideration or decision of this case.