### UNITED STATES v. BROWN et al.

(District Court, D. Idaho, E. D.   February 10, 1922.)

Eminent domain ⬅️67—Act expressly authorizing condemnation of land for new town site, in aid of irrigation project, held valid.

> Under the rule that the necessity of taking land by condemnation for a public purpose is a legislative question, and that when the taking is to be by the government itself an act authorizing it is presumed to be within the constitutional power of Congress, the provision of Sundry Civil Appropriation Act March 4, 1921, expressly authorizing the Secretary of the Interior "to purchase or condemn and to improve suitable land for a new townsite to replace the portion of the town of American Falls which will be flooded by the reservoir, and to provide for the removal of buildings to such new site," etc., held valid, and to authorize such condemnation; it appearing that the building of the dam across the Snake river necessary to the Minidoka project of irrigation in Idaho will necessarily flood a portion of the present town site, and that without the power to acquire and improve a new site it would be difficult, if not impossible, to acquire rights with respect to public streets, structures, and buildings essential to the carrying out of the project.

At Law. Action by the United States against De Witt Garrison Brown and others, to condemn land. Right to maintain action sustained.

J. L. McClear, U. S. Atty., J. R. Smead, Asst. U. S. Atty., and B. E. Stoutemyer, Dist. Counsel of U. S. Reclamation Service, all of Boise, Idaho, for the United States.

Peterson & Coffin, of Pocatello, Idaho, for defendants Brown.

DIETRICH, District Judge. This is a suit in eminent domain, by which the government seeks to acquire the title in fee simple to 120 acres of land, the property of the defendant De Witt G. Brown, situate near American Falls, in Power county, Idaho. It is shown that, proceeding under the Reclamation Act (32 Stat. 388 [Comp. St. §§ 4700–4708]) and acts supplementary thereto, the Secretary of the Interior intends to construct a dam across the Snake river at American Falls,

---

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

by means of which flood waters are to be impounded for use, in part, at least, in irrigating lands embraced in the Minidoka project, a short distance down the river. From the westerly or right bank of the river at this point the ground rises abruptly, but along the lower easterly bank is a strip of comparatively level land, which comprises the site of the town, and the plan is to build a dam that will not only obstruct the river channel, but will extend across this level tract to higher ground east of the town, and thus submerge the up-river portion of the townsite. The lands in question are a little more than half a mile east of the easterly end of the proposed embankment, and are apparently thought to be suitable for use as a part of the new town site. It is estimated that at the present time American Falls has about 1,500 inhabitants, and that the town site embraces in excess of 800 acres, approximately three-fourths of which will be flooded. The government has already acquired 495 acres for the new site, and desires the additional tract in controversy.

It is also alleged that in part the land is desired for the temporary housing of workmen to be employed in constructing the dam. But there is no attempt, either in the pleading or in the evidence, to segregate or describe the area desired for that purpose. Moreover, there seems to be no competent authority for such an averment. The testimony as to the plans and purposes of the government is only that of a local engineer of the Reclamation Service, who manifestly is without authority to speak upon the subject. I am not unmindful of the rule recognized in Forbes v. United States (C. C. A.) 268 Fed. 273, and the cases therein cited; but of course the presumption there indulged is not conclusive. As a part of the evidence here submitted we find a certified copy of a letter written April 21, 1921, by the First Assistant Secretary of the Interior to the Attorney General, stating that the land is desired for the new town site, and requesting the letter to direct the district attorney for Idaho to bring suit; no other intended use is intimated. The letter was introduced by plaintiff, and presumably it is the warrant, and the only warrant, for the commencement of the action. Neither the district attorney, by averment, nor the engineer of the local reclamation service, by speculation as to the manner in which the construction work will probably be prosecuted, can add to or modify the purpose for which the land is sought, as such purpose is declared by the only officer having the requisite authority.

Can the land be condemned for town-site purposes? Under section 7 of the Reclamation Act (Comp. St. § 4706), condemnation proceedings are authorized in all cases where, in carrying out the provisions of the act, it becomes necessary to acquire any rights of property, and by the laws of Idaho irrigation is recognized as a public use. Hence the power of the government to construct the proposed reservoir, and its right to do all things incidentally necessary to that end, the defendant does not question. Burley v. United States, 179 Fed. 1, 102 C. C. A. 429, 33 L. R. A. (N. S.) 807; McCulloch v. Maryland, 4 Wheat. 408, 4 L. Ed. 579. Upon the other hand, it must be conceded that generally the government is without the power to engage in the promotion of town sites, and unless the enterprise here bears a substantial relation

to the irrigation project, it cannot be held to be of such a public character as to warrant the exappropriation of private property. Such relation does not necessarily arise from the mere fact that the town site may turn out to be profitable, and that the irrigation project, being the beneficiary, may be constructed at a smaller net cost than would otherwise be possible. The town site may or may not be profitable; the promotion of such enterprises is necessarily a speculative and hazardous business.

But, assuming that it will be profitable, an enterprise by which private property is taken for essentially private uses is not rendered public by the fact that the incident profit is to be applied to public purposes. Were the proposed use of an expected profit the criterion, the right of the government to take private property would be practically unlimited. It might condemn, not only the requisite site for a post office, but likewise an indefinite amount of other property, merely to be sold back into private ownership at a profit, out of which to pay for the site. However, the case here presents other considerations. The conditions are exceptional. The major part of an improved and occupied town site is essential to the execution of a great public work. Vested rights there are, in great variety and complexity, public as well as private. It is fair to assume that on the town site are streets and avenues, sidewalks, water pipes, sewers, schoolhouses, and possibly other public structures. The right to condemn may be doubtful, and, even if the right be assumed, the process of procuring title necessarily intricate and difficult.

By providing and improving an equivalent site in close proximity, the government may, by voluntary action on the part of private owners and the public, be able to acquire rights which otherwise it would be impossible, or at least extremely difficult, to extinguish. Led by these or other considerations, Congress has deemed the matter of sufficient importance to supplement the general power granted in section 7 of the Reclamation Act by an express provision specifically conferring authority—

"to purchase or condemn and to improve suitable land for a new townsite to replace the portion of the town of American Falls which will be flooded by the reservoir, and to provide for the removal of buildings to such new site," etc. Sundry Civil Appropriation Act of March 4, 1921 (41 Stat. 1403).

"It is well settled that, while the question whether the purpose of a taking is a public one is judicial (Hairston v. Danville, etc., Ry. Co., 208 U. S. 598), the necessity and the proper extent of a taking is a legislative question (Shoemaker v. United States, 147 U. S. 282, 298; United States v. Gettysburg Ry. Co., 160 U. S. 668, 685; United States v. Chandler-Dunbar W. P Co., 229 U. S. 53, 65)." Sears v. City of Akron, 246 U. S. 242, 38 Sup. Ct. 245, 62 L. Ed. 688.

By the provision above quoted from the Sundry Civil Appropriation Act, Congress has unmistakably declared the use a public one, and in United States v. Gettysburg Ry. Co., 160 U. S. 668, 16 Sup. Ct. 427, 40 L. Ed. 576, supra, the Supreme Court, commenting upon such legislative declarations, said:

"It is stated in the second volume of Judge Dillon's work on Municipal Corporations (4th Ed. § 600) that, when the Legislature has declared the use or purpose to be a public one, its judgment will be respected by the courts, un-

less the use be palpably without reasonable foundation. Many authorities are cited in the note, and, indeed, the rule commends itself as a rational and proper one. As just compensation, which is the full value of the property taken, is to be paid, and the amount must be raised by taxation where the land is taken by the government itself, there is not much ground to fear any abuse of the power. The responsibility of Congress to the people will generally, if not always, result in a most conservative exercise of the right. It is quite a different view of the question which courts will take when this power is delegated to a private corporation. In that case the presumption that the intended use for which the corporation proposed to take the land is public is not so strong as where the government intends to use the land itself. In examining an act of Congress, it has been frequently said that every intendment is in favor of its constitutionality. Such act is presumed to be valid, unless its invalidity is plain and apparent; no presumption of invalidity can be indulged in; it must be shown clearly and unmistakably."

In view of the unusual conditions here confronting Congress, I do not think it can be said that its judgment, as expressed in the language quoted, is "palpably without reasonable foundation." Upon investigation it may have been fairly concluded that, without such authority, it would be impracticable for the Reclamation Service to execute the reservoir project; and hence, under the principles enunciated by the Supreme Court, the validity of the act must be recognized, and the right of the government to condemn sustained.