Upon a further consideration of the questions involved in this case, on petition for rehearing, I concur in the conclusion that the rehearing should be denied, but I cannot concur fully in all the reasons given in the able opinions of JUSTICES WHITFIELD AND ELLIS.
I have become convinced that Section 29 of Article 16 of the Constitution is not applicable to a public corporation acquiring property for the State for a purely public purpose and the title to and control of which property will, when acquired, be vested in the State of Florida, because certain language of such constitutional provision shows that it does not apply. It reads: *Page 635 
"No private property or right of way shall beappropriated to the use of any corporation or individual until full compensation therefor shall be first made to the owner, first secured to him by the deposit of money," etc. (Italics mine.)
The Act here in question (Chap. 10118, Laws of 1925), construed in connection with other prior acts relating to state roads and the State Road Department, shows that whatever property is acquired for state roads and bridges, in the exercise of the power of eminent domain, either by such Road Department itself, or by the County Commissioners acting in its behalf, will be appropriated to the use of, and become the property of, the State of Florida, which means the people of Florida, and for the common good. (See Chap. 7900, Acts of 1919; Chapter 9311, Acts of 1923). It will not be "appropriated to the use of any corporation or individual," and hence the constitutional provision referred to does not apply. It is true, the State Road Department is, by the Act, made "a body corporate for the purposes of the Act," and a county has a certain restricted corporate capacity, yet in the exercise of eminent domain for the acquisition of lands for state roads, neither is acquiring anything for itself in its corporate capacity, but only for the state, and all that either may acquire under the Act here in question will be "appropriated to the use of" the state. The fact that the State Road Department is vested with certain duties with reference to the surveying, location, acquisition of right of way, and construction and maintenance of such roads, does not alter the situation, for all of these things pertain to it merely as an agency of the state. Arundel Corporation v. Griffin, 103 So. 422; Keggin v. Hillsborough County, 71 Fla. 356, 71 So. 372. The status of railroad and other private corporations, although they are permitted to condemn property only for public *Page 636 
purposes, is quite different. Although the property asquired may be affected with a public interest, and used for public as well as private purposes, the title thereto, and the use, management and operation thereof, is private, and the profits made go to the private owners. So in a very real sense, the property acquired by the exercise of the delegated power of eminent domain by such corporations is "appropriated to the use of" the corporations, and this section of the constitution applies.
There is, however, another provision of our constitution which does apply to the exercise of the power of eminent domain by public as well as private corporations, and even by the state itself. That is, the limitations imposed by Section 12 of the Declaration of Rights, that, "No person shall * * be deprived * * property without due process of law; nor shall private property be taken without just compensation." Does the enactment now before us offend against either of these provisions? To my mind, it conflicts only with the guarantee of due process, and the vested judicial power of the courts.
The right of eminent domain is inherent in the sovereignty of the state, and while it may be limited it is not created, by the constitution. It is an attribute of sovereignty which the state would have even though there were no constitutional grant of the power. While the question of whether the use for which private property is taken is a public use is ultimately a judicial question, where the legislature declares a particular use to be a public use, the presumption is in favor of its declaration, and the courts will not interfere therewith unless the use is clearly and manifestly of a private character. 20 C. J. 549-552, and cases cited; Sears v. City of Akron, 246, U.S. 242, 62 L.Ed. 688, 38 Sup. Ct. Rep. 245; Isleworth Grove Co. v. Orange County, 79 Fla. 208, 84 So. 83. The *Page 637 
appropriation of private property for the establishment of public highways has been uniformly held to be a public use. 20 C. J. 559. The Supreme Court of the United States holds that while the question of whether the purpose of the taking is a public one, is a question for the courts, the necessity for, and proper extent of, the taking, is a legislative question. Sears v. City of Akron, supra.
However, the necessity for taking any particular parcel ofland for the carrying out of even an admittedly public purpose is ultimately a judicial question on which the landowner if he so desires, has a right to be heard. 20 C. J. 629-30. The rule is well settled that wherever land is taken under the power of eminent domain, even for a purpose confessedly public, it is necessary that the owner should have due notice of the proceedings and an opportunity to appear and protect his rights. This is jurisdictional, and essential to due process. Jacksonville etc., R. Co. v. Adams, 27 Fla. 443, 9 So. 2; Ramapo Water Co. v. New York, 236, U.S. 579, 59 L.Ed. 731, 20 C. J. 927-8. While the grantee of the power of eminent domain is allowed a reasonable discretion in determining the necessity and extent of the appropriation, whether any necessity whatever actually exists is in the ultimate a judicial question. St. Louis, etc., R. R. Co. v. Southwestern Tel. Co., 121 Fed. 276, 58 C.C.A. 198; 20 C. J. 630, and cases cited. The grantee of such power may determine the location of the land required to be appropriated in order to accomplish the public purpose in view, and such determination will not be interfered with by the courts if it is made in good faith and is not capricious or wantonly injurious or in some respect beyond the privilege covered by the statute. See numerous authorities cited on pages 632 to 634, Vol. 20, C. J.
There can be no doubt that the purpose of the appropriation *Page 638 
contemplated by the Act here involved is public; nor is the point challenged by the petitioners for the writ. Their contention is that Section 2 of Chapter 10118 in unconstitutional, first, because it affords a taking before the amount of compensation is actually determined by a jury, and paid by the petitioners in the condemnation proceedings; and second, that the method outlined by Section 2 denies due process.
The first point is disposed of by showing that Section 29 of Article 16 of our Constitution does not apply. Nor does the provision that "private property shall not be taken without just compensation" require that the compensation shall be fixed and paid prior to the occupancy of the land sought to be taken. Sweet v. Rechel, 159 U.S. 380, 40 L.Ed. 188,16 Sup. Ct. Rep. 43; Cherokee Nation v. Southern Kan. Ry. Co., 135 U.S. 641,34 L.Ed. 295, 10 Sup. Ct. Rep. 965; 20 C. J. 837, and cases cited.
"While there is some authority at least to the contrary, the general rule is that in the absence of any constitutional requirement it is not ordinarily necessary for a State or municipal subdivision thereof to pay for property taken for public use in advance of the taking, if provision is made for payment and a proper tribunal constituted, so that the land owner can make his claim and recover compensation or damages, and this is the case where the constitution, although requiring prepayment, expressly excepts from its operation a State or municipal corporation, or limits the requirement to cases of taking by 'corporations' or where the Constitution or statutes require compensation to be first paid or secured. It is sufficient that an adequate or safe fund is provided from which payment is to be made, as, for instance, making the amount payable a charge upon the public treasury either of the State or some municipal subdivision thereof, which is considered equivalent to actual compensation. So it has been held that the power of taxation *Page 639 
given a municipality is ordinarily adequate security. Nevertheless, it is generally held that under a Constitution providing generally that private property shall not be taken for public use without compensation being first made, prepayment by municipal corporations is as much necessary as in the case of private corporations and individuals, and the rule applies where prepayment is expressly required by statute. An award of damages and a judgment therefor is not a compliance with these provisions." 20 C. J. 833-835, Sec. 269, and cases cited.
In State ex rel. Moody v. Jacksonville, T. K. W. R. Co.,20 Fla. 616, this court, speaking through Justice WESTCOTT, held that "The mode or method of exercising the right of eminent domain, in the absence of any provision in the organic law regulating it, is within the discretion of the Legislature. The limitation is that it shall be exercised for a public purpose, with just compensation; and vesting the power of ascertaining it in a court and appraisers is constitutional." It was further held that a statute authorizing a railroad company, which has not acquired title to land upon which it has constructed its track, to have an appraisal for the damage done to the owner, and to remain in possession during the pendency of the proceedings, and to have a stay of all actions pending against the company on account thereof, upon such company paying into court a sufficient sum, as the court may direct, to pay the compensation therefor when finally ascertained, is constitutional. On page 655 of the opinion, it is said: "Objection is made on the ground that the court is given authority to fix the cash sum to be paid into court to meet the compensation to be awarded, and because the right to institute the proceedings to appraise is restricted to the company. These objections concern the method of exercising the right of eminent domain under the Constitution, as to which, as remarked by the Supreme Court of the United States: 'It *Page 640 
is no longer an open question in this country that the mode of exercising the right of eminent domain, in the absence of any provision in the organic law prescribing a contrary course, is within the discretion of the Legislature.' "
Justice WESTCOTT continues: "The court here has the authority to hear witnesses, to determine the amount of the deposit by virtue of its general power, to determine what is a sufficient sum, and it is a very proper authority to exercise the power."
At the time this decision was handed down, 1884, the then Constitution did not embrace such a provision as Section 29 of Article 16, but if we are correct in our view that this section is not applicable here, all that Justice WESTCOTT said, in the case above cited, is both applicable and pertinent.
See also the opinion of Chief Justice White in Crozier v. Fried Krupp, 224, U.S. 290, 56 L.Ed. 771, 32 Sup. Ct. Rep. 488, and Backus v. Fort St. Union Depot Co., 169 U.S. 557,42 L.Ed. 852, 18 Sup. Ct. Rep. 445. In the opinion in the last cited case it is said: "There can be no doubt, if adequate provision for compensation is made, authority may be granted for taking possession pending inquiry as to the amount which must be paid and before any final determination thereof."
The Act we are considering provides that the State Road Department or counties acting in its behalf shall have the power of eminent domain to condemn lands and property for securing right of ways for State roads and bridges, and that such proceedings shall be the procedure prescribed by Section 1503 et seq. of Rev. Gen. Stats., together with such rights as are secured by Section 2 of said Act.
That this procedure, without Section 2 of the Act, affords a reasonably prompt method for the ascertainment and payment of compensation cannot be denied, and the judgment *Page 641 
of appropriation is void unless the compensation is paid within a few days after verdict and judgment. Hence the landowner's title does not pass unless the compensation fixed by the jury is promptly paid. Not only has the landowner this security for payment, but the Act here involved provides for payment out of the road funds of the State Road Department, or of the county, respectively. By implication, the public faith and credit and the power of taxation is also pledged.
As there is no doubt of the right of the State through the agency of its Road Department, or one of its political subdivisions, to take private property when needed for such an admittedly public purpose as a public highway, the only real question involved in these particular condemnation proceedings is the adjudication of the amount of compensation and the payment thereof to the owner, the necessity of the taking of the particular property not being denied. This being the case, and the weight and reason of authority, as above shown, being to the effect that in such cases the ascertainment and payment of compensation need not precede the taking, it might have been within the power of the Legislature to have provided some procedure by which, after the filing of the petition in the form and manner prescribed, and the service of process upon the owner, and after the giving of due and reasonable notice to him, affording due process of law, the State through its Road Department might be authorized by an order of court, before the final jury trial on the question of compensation, to enter and occupy the land or property sought to be taken and proceed to the construction of the State road or bridge for which such lands are necessary; but the method adopted in Section 2 of the Act is void in that it denies due process and hampers the judicial function, as pointed out in the opinion of Mr. JUSTICE WHITFIELD. *Page 642 
It is true, this ascertainment by the judge provided in Section 2 is provisional and preliminary as to the amount of compensation, and is not binding upon the jury afterward empanelled to try the question; nor would it be admissible evidence before such jury on the question of value or compensation. But it is not provisional and preliminary as to one important feature — the taking of possession of the landowner's property without notice, and its immediate appropriation to the construction of the road or bridge. As to this it is practically final. The statute does not say upon whose motion the judge shall act, nor that any notice shall be given to either party; but by implication, the Act provides that the petitioner, alone, where immediate possession is desired, may apply to the judge to take action under this proviso, and the judge could proceed to fix the value without notice to the defendant, in this ex parte manner.
It will be observed that the Circuit Judge is given the power to make this preliminary ascertainment of value upon evidence afforded by affidavits alone, of disinterested persons owning land in the vicinity, which must be not less than three in number. It is true he may require as many affidavits as he desires. He need not take any action at all unless he has before him affidavits which in his judgment afford a sufficient basis to arrive at a fair and definite opinion as to such value. There is no compulsion upon the judge. He can refuse to make the finding if satisfactory evidence therefor is not produced. The only limitation is that his finding as to the value must be based upon "affidavits of not less than three disinterested freeholders owning property in the vicinity of that sought to be taken." He can of course require more than three affidavits if desired by him. But he is limited, in effect, to the consideration *Page 643 
of such ex parte affidavits as may be submitted to him by the petitioners.
The question arises whether this provision is an invasion of the judicial discretion, which is beyond the power of the legislature. The general principle involved was well stated by MR. JUSTICE WHITFIELD, speaking for this court, in Ruff v. Georgia, S. F. R. R. Co. 67 Fla. 224, 64 So. 782, as follows: "Nor can the legislature lawfully interfere with the substance of the judicial power and discretion vested in the courts by the constitution. The legislature may lawfully prescribe rules of procedure which the courts will observe; but the legislature has no power under the constitution to regulate the judicial discretion that is vested in the courts." It is well settled that the legislature can establish rules of pleading and evidence so long as it violates no constitutional requirements or rights guaranteed by it. And while it may not make evidence of certain facts conclusive, it may declare that proof of certain facts shall be prima facie evidence of some other substantive fact. It may permit the issuance of an attachment on ex parte affidavit, or of a temporary injunction or restraining order without notice, on one or more ex parte
affidavits. It may prescribe that evidence of a certain character shall be admissible, and regulate the burden of proof. But it cannot determine disputed questions of fact affecting the rights of person or property, or encroach upon the well recognized discretionary or adjudicatory powers of the courts of justice in that regard. See generally 12 C. J. pages 807, 823, 827. And to limit and confine a court, in the determination of any justiciable question, to the consideration of evidence submitted only in the form of ex parte affidavits, is going a little too far, and encroaches upon the well recognized discretionary and adjudicatory powers of the courts," and hence is an invasion by the *Page 644 
legislature of the judicial power vested by the constitution in the courts alone.
Because of the failure of the provision in Section 2 to afford due process, and its invasion of the judicial power, its invalidity clearly appears, and the motion for rehearing should be denied.
TERRELL AND STRUM, J. J., concur.