## UNITED STATES v. 3.65 ACRES OF LAND IN CITY OF ST. LOUIS, MO., et al.

### No. 2496.

District Court, E. D. Missouri, E. D.

Jan. 13, 1944.

Harry C. Blanton, of Sikeston, Mo., for plaintiff.

Clarence T. Case and David W. Voyles, both of St. Louis, Mo., for defendant.

HULEN, District Judge.

This case is before the Court on a motion of defendant land owner to vacate the order of immediate possession heretofore made in this cause.

On the 27th day of December, 1943, plaintiff filed a verified petition, seeking condemnation and immediate possession of certain land owned by the defendant. Other relief sought by the petition is not material to the present issue. Paragraph "Fifth" of the petition reads as follows: "Fifth: That the project herein referred to and the matters to be performed, being an acquisition of land in connection with the expansion of facilities for the manufacture and production of magnesium sand castings for war purposes (National Magnesium Casting Company—Plancor 1990), such facilities to be constructed by Defense Plant Corporation, a corporation created pursuant to Section 5 (d) of the Reconstruction Finance Corporation Act, as amended, are within the purview of the sovereign plaintiff and of the Congress of the United States and the said lands and territory to be acquired are located within the jurisdiction of this Court; *that said lands are necessary to the successful prosecution of the war and have been selected by the Reconstruction Finance Corporation* for acquisition by the United States for use in connection with the expansion of facilities for the manufacture and production of magnesium sand castings *for war purposes* (National Magnesium Casting Company—Plancor 1990), and for such other uses as may be authorized by Congress or by Executive Order, and are required for immediate use." (Emphasis added)

On filing of the petition an order of immediate possession was entered, which contains the following findings:

"It appearing to the Court from the petition filed by the plaintiff in this cause, that *the lands* mentioned and *described in the* said *petition, and sought to be condemned* in this cause *are needed for use in connection with* the expansion of facilities for the manufacture and production of magnesium sand castings *for war purposes* (National Magnesium Casting Company—Plancor 1990) such facilities to be constructed by Defense Plant Corporation, a corporation created pursuant to Section 5 (d) of the Reconstruction Finance Corporation Act, as amended, *and it is necessary for war purposes to acquire the land herein and in the petition set out.* * * *

"It further appearing to the Court that considerable time may elapse before a final hearing can be had on the petition filed herein." (Emphasis added)

On January 6, 1944, defendant filed its motion to set aside the order of immediate possession. Defendant's motion alleges that the National Magnesium Casting Company, named in the petition for condemnation, has obtained a contract to manufacture magnesium castings and has effected an arrangement with the Recon-

struction Finance Corporation for a loan to finance the enterprise and is seeking the property described in the petition in condemnation as physical facilities to engage in said business, and alleges that numerous other properties are available.

Defendant, by its motion, further avers that persons interested in the National Magnesium Castings Company have made false representations to the Reconstruction Finance Corporation to the effect that the property of the defendant has been idle and is not engaged in war work and that defendant's plant and equipment is the only property available for the manufacturing purposes contemplated by the National Magnesium Casting Company. It is alleged that the defendant is now engaged, under sub-contracts, in manufacturing certain products in aid of war production and has under consideration further contracts for materials—"entitled to priority either equal to or higher than the manufacture of magnesium castings". The motion concludes: "That by reason of its unwillingness or neglect to make due inquiry and investigation of the Bradbury Marble Company's war activities, the Reconstruction Finance Corporation has failed to exercise sound discretion required of it under the law. That it has misused and abused its discretionary powers and has permitted itself to become an instrumentality of force to deprive and defraud the Bradbury Marble Company of its property for the sake of enhancing the business scheme and promotion of this new venture known as the National Magnesium Casting Company".

Plaintiff is proceeding under the Second War Powers Act, 1942, 50 U.S.C.A. Appendix § 632, and Executive Order 9217 issued by the President of the United States on August 7, 1942, 50 U.S.C.A. Appendix § 632 note by virtue of and pursuant to authority vested in him by Title II of the Second War Powers Act, 1942, approved March 27, 1942, Public Law 507, 77th Congress. Executive Order No. 9217 authorizes the Reconstruction Finance Corporation to exercise the authority conferred by said Title II of the Second War Powers Act, to acquire, use, and dispose of property, "that the Corporation shall deem necessary for military, naval or other war purposes."

At the hearing on this motion a letter from the Department of Justice was introduced in evidence by the plaintiff, the first paragraph of which reads as follows: "Enclosed is a certified copy of a letter from the Assistant Secretary of Reconstruction Finance Corporation requesting that condemnation proceedings be instituted to acquire the fee simple title to 4.65 acres of land, more or less, in the City of St. Louis, Missouri, in connection with the expansion of facilities for the manufacture and production of magnesium sand castings *for war purposes* (National Magnesium Casting Company—Plancor 1990) by Defense Plant Corporation, under the provisions of the Act of Congress approved March 27, 1942 (Public Law 507, 77th Congress)." (Emphasis added)

The letter of the Reconstruction Finance Corporation, referred to in the letter of the Attorney General, contains the following paragraphs:

"In connection with the expansion of facilities for the manufacture and production of magnesium sand castings for war purposes (National Magnesium Casting Company—Plancor 1990), such facilities to be constructed by Defense Plant Corporation, a corporation, created pursuant to Section 5 (d) of the Reconstruction Finance Corporation Act, as amended, *this Corporation has determined that it is necessary for war purposes to acquire certain lands located at St. Louis, Missouri.*

"Therefore, pursuant to the provisions contained in the Act of Congress, 47 Stat., Chapter 8, pages 5-12 approved January 22, 1932 (15 U.S.C. 601-617 [15 U.S.C.A. §§ 601–617]), as amended, and Public Law 507, 77th Congress, approved March 27, 1942, and Executive Order 9217, issued by the President of the United States on August 7, 1942, by virtue of and pursuant to authority vested in him by Title II of the Second War Powers Act, 1942, approved March 27, 1942 (Public Law 507, 77th Congress), authorizing Reconstruction Finance Corporation to acquire and dispose of property *deemed necessary for military, naval or other war purposes,* it is requested that you cause the necessary proceedings to be instituted for the condemnation of the fee simple title to the lands described in Exhibit "A" and defined on the enclosed map entitled Exhibit "B".

"*You are advised that it is vital to the successful prosecution of the war* that this project be expedited with the utmost haste and that the United States be given the immediate right to occupy, use and improve the lands described in Exhibit "A". Consequently, it is requested that you cause the necessary action to be taken to procure an Order from the Court granting the im-

mediate right to occupy, use and improve the lands described in Exhibit "A", pursuant to the provisions of the Act of Congress approved March 27, 1942, Public Law 507, 77th Congress, and Executive Order 9217 issued by the President of the United States on August 7, 1942, by virtue of and pursuant to authority vested in him pursuant to said Public Law 507, 77th Congress, supra." (Emphasis added)

Assuming that the motion charges an abuse of discretion on the part of plaintiff, the issue presented is whether this Court can go behind the findings of the Reconstruction Finance Corporation, inquire into its intention and substitute its judgment for the judgment of the Reconstruction Finance Corporation.

The petition filed in this case alleged the property described and sought to be condemned had been found necessary "for war purposes"; the order of taking found the property sought to be condemned was "necessary for war purposes"; evidence was offered at the hearing on the motion that the property sought to be condemned was "for war purposes", evidenced by the communication of the Attorney General of the United States and the Reconstruction Finance Corporation. The letter of the Reconstruction Finance Corporation offered in evidence alleges that the property sought to be condemned *"is vital to the successful prosecution of the war * * *"*.

The defendant does not challenge the fact that the Reconstruction Finance Corporation has made a finding that the property involved is necessary for war purposes, but by its motion seeks a hearing on the question, whether such a finding should have been made by the Reconstruction Finance Corporation.

We believe the decision of the Reconstruction Finance Corporation to condemn and take the property described in the petition is not open to review by this Court.

The authorities sustaining this position are based upon sound principles of public policy, applying to times of great National emergency. If the defendant, by its present motion, can halt this proceeding and actions contemplated by the plaintiff under the present Court order, until it can be heard in the various courts on its claim that the government has no right to take the property sought in this cause, so in every other contemplated proceeding to obtain property necessary for the war effort, a property owner would have a like right. If such right is not to be accorded every defendant in a proceeding of the character now before the Court, such right should be denied to this defendant. To hold that a defendant can stay proceedings of this character while it is heard on questions affecting the quality of judgment exercised by the condemning power, could have no result other than to delay and interfere with the prosecution of the war. Such action, during a war in which our very existence is at stake, would lend aid and comfort to the enemy in its declared purpose to destroy this Government. This will not be countenanced.

Defendant is not without recourse. It is entitled to and will receive just, fair and complete compensation for all property taken from it by the United States.

On the general subject of judicial review of the determination by administrative officers of the necessity to take private property for public purposes, the Eighth Circuit Court of Appeals, in the case of Barnidge v. United States, 101 F.2d 295, loc. cit. 299, said: "It is contended by appellant that the lands sought to be taken are not necessary for the effectuation of the purposes of the Historic Sites Act. But the Secretary has determined that it is necessary and expedient to acquire these lands, and the duty of determining that fact was vested in him and not in the courts. When Congress delegates to an administrative officer the power to determine necessity, his determination, with exceptions not here important, is not subject to judicial review. Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170; Sears v. [City of] Akron, 246 U.S. 242, 38 S.Ct. 245, 62 L.Ed. 688; Bragg v. Weaver, 251 U.S. 57, 40 S.Ct. 62, 64 L.Ed. 135; Joslin Mfg. Co. v. [City of] Providence, 262 U.S. 668, 43 S.Ct. 684, 67 L.Ed. 1167; Rindge Co. v. Los Angeles County, 262 U.S. 700, 43 S.Ct. 689, 67 L.Ed. 1186; United States v. Threlkeld, 10 Cir., 72 F.2d 464; Coggeshall v. United States, 4 Cir., 95 F.2d 986."

Such being the law on judicial review of administrative findings that certain private property is necessary for public purposes, for peace time objectives, what is the rule on like questions, where the property is declared by the administrative officer to be necessary to "the successful" waging of war in defense of our country?

In the case of City of Oakland v. United States, 124 F.2d 959, certiorari denied 316 U.S. 679, 62 S.Ct. 1106, 86 L.Ed. 1753, the Ninth Circuit Court of Appeals had before it a question similar to the one now presented. It was a condemnation proceeding by the government. It was alleged the property sought was necessary for military purposes. On filing the petition an order of taking was made. The land owner filed a motion to vacate the order of taking and on same being overruled prosecuted an appeal. In disposing of the case the Appellate Court said (124 F.2d loc. cit. 964):

"The purpose of laws such as the one under discussion is to permit the Government in its sovereign·capacity to proceed with necessary public works *without being hampered by delays which might occasion great and irreparable injury*. When the greatest combination of autocratic powers of all time is ruthlessly engaged in an attempt to strangle the liberty of the world, to delay action in achieving military objectives may well be fatal. Here, in an emergency of war, the Government through its Secretary of War, acting under statutes passed for the purpose, has found and declared that the property taken is necessary for military purposes; and provision has been made to recompense the owners fully for the taking. Appellant, however, insists that it should have the right to halt the progress of the work until it can be heard in the various courts to prevent the Government from taking this necessary action. The sovereign state should not be reduced to such impotency. Where the Secretary of War has proceeded as prescribed by the Act of Congress, *the court will not go behind his declaration to inquire into his intentions*. Old Dominion Land Co. v. United States, 269 U.S. 55, 66, 46 S.Ct. 39, 70 L.Ed. 162; United States v. Forbes, supra [D.C.], 259 F. [585] at pages 591, 592." (Emphasis added).

In the case of United States v. 243.22 Acres of Land, 129 F.2d 678 (Second Circuit), a question not unlike the one now before the Court was presented. There the Court ruled (129 F.2d loc. cit. 683): "There was no error in denying appellant the bill of particulars and in excluding the offered proof. The alleged errors related to appellant's efforts to show that the Secretary of War *was not acting in good faith and was abusing his powers in that, although, in accordance with the Act,* he

had stated that the taking of the land was necessary in the interest of national defense, he was proposing, pursuant to statute, to have the United States lease the land, with an option to purchase, to Republic Aviation Corporation, which is engaged in manufacturing airplanes for the United States. *The decision of the Secretary of War is not open to judicial inquiry.* That is fortunate, for if it were open, the ensuing delay would delight our country's enemies." (Emphasis added)

In the case of Alpirn v. Huffman, D.C., 49 F.Supp. 337, 341, the government corporation seeking condemnation of the property involved was "The Metals Reserve Company". The District Court of Nebraska ruled: "The right of government to exercise the power which the plaintiffs assail being allowed, it follows that, if the discretion preliminary to its exercise is reposed in the executive, that discretion is not a proper subject for judicial review. And this is particularly true when the relief sought is through the extraordinary and thwarting remedy of injunction."

In the case of United States v. 23,263 Acres of Land in the State of Washington, D.C., 45 F.Supp. 163, the agency seeking the land was "The Maritime Commission".

During the first World War, in condemnation proceedings to acquire property in aid of the war effort, questions like the one here under consideration were before the Courts. In the case of Dexter & Carpenter v. United States, D.C., 275 F. 566, 570, it was ruled: " * * * It clearly appears from the petition that the executive branch of the government had legal power and authority to take coal for a public use connected with the common defense, and that plaintiff's coal was taken for that purpose. *Whether the taking was 'necessary' was for the exclusive determination of the executive branch of the government, and its decision upon that matter is not subject to judicial review,* and consequently is not here in issue." (Emphasis added)

The defendant has cited a number of cases in its brief. The authorities cited by defendant do not involve condemnation proceedings to acquire property found necessary in the prosecution of the war, nor were they proceedings under War Powers Act. They involve proceedings in which the plaintiff seeking property by condemnation was either a city or a private

corporation.[1] The application of such authorities to proceedings of the character now before the Court is well illustrated by the opinion in the case of United States v. Forbes, D.C., 259 F. 585, loc. cit. 588:

"There appears to be a clear distinction between the adjudged cases brought under acts of the state Legislature by railroad companies, waterworks companies, and the like, and those adjudged cases where the United States has sought to condemn, under Act of Congress, lands for public use.

"In the first class of cases the necessity for the condemnation seems to be a question for judicial determination. In the other class, to which class the case we are now trying belongs, the question of the necessity for the condemnation is not left to judicial determination, for this power was bestowed by Congress on the Secretary of War, the Secretary of the Treasury, or Secretary of the Interior, as the case may be; and the weight of authority sustains the proposition that the action of the official to whom this duty and discretion is delegated by Congress is not reviewable by any court."

We believe the motion of defendant to set aside the order authorizing the United States to take possession should be and same is overruled. Like ruling on motion for leave to take depositions.

---

[1] Except in the case of City of Oakland v. United States, which has been referred to in this opinion and does not support the position taken by the defendant.