STURGIS, Justice.
The appellee, Florida Inland Navigation District, was created as a public body corporate by Chapter 12026, Laws of Florida 1927. Pursuant thereto the inland waterway from Jacksonville to Miami, Florida, was purchased from Florida Coast Line Canal and Transportation Company with proceeds from the sale of bonds and transferred to the United States of America, by which it has since been owned and maintained.
Chapter 14723, Laws of Florida 1931, re-enacted and amended Chapter 12026, Laws of Florida 1927. These Acts created the Florida Inland Navigation District, a special taxing district, with power “to buy, acquire by condemnation or eminent domain, sell, own, lease and convey, such real estate and personal property,” as the governing Board of the district “may deem proper to carry out the provisions” of the Act. Section 2. The material statutory purpose of Chapter 14723 is set out in footnote 1 of this opinion.
*617 It is not contested that at all times material to this appeal the Florida Inland Navigation District has not owned or maintained any waterway; that by the sale of bonds which are being retired with the proceeds of an ad valorem tax levied on the taxable property within the district, it has heretofore purchased and conveyed to the United States the Florida East Coast Canal, for use as part of the federal Intracoastal Waterway affording a continuous sheltered route for light-draft navigation from a point in the southern part of Florida to Norfolk, Virginia, and thence via Chesapeake Bay and the Chesapeake-Delaware Canal to Philadelphia; that it has furnished to the United States the right of way for that part of the Intracoastal Waterway traversing the district; that it is still engaged in furnishing without cost to *618 the United States the spoil disposal areas required for the maintenance of the waterway.
It is readily apparent that the Florida Inland Navigation District has no power to select the spoil areas to be used by the federal government, and is authorized only to procure and convey the same in compliance with Section 6 of Chapter 14723, Acts of 1931 (footnote 1), which clearly contemplates that the construction and improvement of the waterway is under the direction of the Secretary of War and the supervision of the Chief of Engineers of the inland waterway.
Pursuant to a resolution of the governing Board of Florida Inland Navigation District, hereinafter referred to as the District, this proceeding in eminent domain was brought under Chapter 14723, Laws of Florida 1931, to condemn to its use fee simple title to certain real property of the appellant, J. Edward Miller, defendant below, for use “as a spoil area for the deposit of ■ dredged material in the work of moving and/or constructing the Inland Waterway, and in connection with the subsequent maintenance thereof.”
Motion to dismiss the petition on grounds challenging its sufficiency to state a cause of action was denied.
Defendant then filed an answer which, inter alia, included an affirmative defense generally to the effect that the petitioner’s power to condemn was limited, under the facts in this case, to the acquisition of an easement upon the land rather than the fee simple title thereto.[2] Petitioner’s motion *619 to strike said defensive matter was granted, the cause proceeded to trial, the jury rendered its verdict fixing the amount to be paid by the District, and final judgment was entered appropriating the fee simple title to its use upon payment of that amount. This appeal is to review that judgment.
The following interrelated points are presented for determination: (1) Whether Chapter 14723, Laws of Florida 1931, empowers the District to condemn fee simple title, rather than a perpetual easement, in order to serve the public use specified in the petition for condemnation. (2) Whether the specified public use is such that it was reasonably necessary for the District to acquire fee simple title to the subject property rather than an easement thereon. (3) Whether the trial court erred in striking the affirmative defense presented by paragraphs 2 to 5, inclusive, of defendant’s answer (footnote 2).
Wilton v. St. Johns County, 1929, 98 Fla. 26, 123 So. 527, 65 A.L.R. 488, is strikingly in point on several of the problems presented by this appeal. In that case the county, in carrying out the powers delegated by Section 2785 et seq., C.G.L., now F.S. § 157.01 et seq., F.S.A., brought a petition in eminent domain to acquire a 50-foot right of way over Wilton’s lands, among others, for drainage ditch or canal purposes. The pleader apparently framed the petition with the intent to make it sufficient under Section 5084, C.G.L., now F.S. § 73.01, F.S.A., relating to condemnation proceedings generally, as well as under Section 2283, C.G.L., then in effect but no longer operative, which related exclusively to the exercise of the right of eminent domain by counties. Un *620 der the latter it was necessary for the petition to state the county purpose to be served and allege the interest or estate sought to be acquired in the subject property. However, under the statute relating to condemnation proceedings generally, Section 5084, C.G.L., the allegation of “county purpose” was not necessary.
In sustaining the action of the trial court denying Wilton’s motion to quash the petition and overruling his demurrer thereto, the Florida Supreme Court held that the petition was sufficient under the general statutory system for condemnation proceedings, § 5084 et seq., C.G.L., and that it was therefore unnecessary to decide whether the action could have been maintained under those sections of the statutes then in effect (§ 2283 et seq., C.G.L.) relating exclusively to condemnation by counties, because the county was authorized to proceed under the drainage statute, § 2785 et seq., C.G.L. (F.S. § 157.01, F.S.A.).
Upon denial of the motion to quash and demurrer, Wilton filed an answer in which, inter alia, it was alleged that the proposed ditch, drain, or canal was not for a county purpose, or any public use, but was for the private use and benefit of private individuals and corporations, and that the County Commissioners were not authorized to maintain the proceeding for such purposes. It also charged that the land sought to be acquired was not necessary for the purpose of obtaining drainage for the lands included within the drainage district outlined in the petition. Motion of the county to strike the answer was granted upon the primary ground that it was an attempt to review the action of the Board of County Commissioners as to matters resting within their discretion; secondarily, that it presented issues that were res judicata in that the objections should have been presented at a hearing called for the purpose before the Board, and could not therefore properly be made issues in the 'condemnation proceeding.
The case was set for trial and Wilton then filed a protest alleging that the action of the court deprived him of any opportunity to assert his constitutional rights. He also tendered and asked permission to file an answer substantially the same as the one which had been stricken. The protest and request were denied. In sustaining that action, the Florida Supreme Court held that since the question had already been ruled upon, counsel were not authorized to attempt to refile a pleading which was practically identical with one which the court had stricken, regardless of whether the court’s action thereon had been correct or not.
On this appeal our attention must first be directed to the question of the right of the landowner to raise the questions presented by the defensive matter that was stricken from his answer. See footnote 2. In the Wilton case the Florida Supreme Court held that the statutes governing the procedure in proceedings for condemnation imply that the landowner is entitled by his answer to set up any valid defense which would show cause why his property should not be taken for the uses set forth in the petition; and that such questions should be determined by the court in limine, before impaneling a jury, because it is not necessary to try the issue of compensation if a preliminary question upon which the right to condemn depends is determined adversely to the petitioner. In the comprehensive opinion written by Brown, J., the court said [98 Fla. 26, 123 So. 532]:
“And it would also appear that at least as to those essential allegations of the petition which the statute requires the petitioner to make, and which are in the nature of jurisdictional conditions precedent to the exercise of the power of eminent domain under such statutes, if the defendant denies them in his answer, or otherwise by properly pleaded allegations of fact shows ‘good cause’ why the petition should not be granted, he would be *621 making such an answer as is contemplated and authorized by the language of the statutes.
* * * * * *
“But the appellee in this case contends that while the defendants in the court below might have raised the questions attempted to be raised by their answer by filing a bill to enjoin the condemnation proceedings, or some other ‘direct’ method of attack, they could not do so by way of answer to such proceedings, as it amounted to a ‘collateral attack’ upon the proceedings had and orders made by the board of county commissioners in the establishment of the drainage canal, and also constituted an effort to review such proceedings, neither of which could be allowed in defending against the condemnation proceedings. The answer to this is that such a bill to enjoin the condemnation proceedings is more in the nature of a collateral attack than an answer filed in the condemnation proceedings.
*****>!<
“At this point we might observe that the board of county commissioners is an administrative and not a judicial body and there is no right of appeal provided from their rulings, nor writ of certiorari to quash same, as is the case with court proceedings. Their decisions, as to matters committed by law to their discretion, are entitled to great weight, and, as we have seen, will usually be accepted and upheld by the courts unless fraud or abuse of discretion be clearly shown or unless it be made to appear that the action taken by such board was without lawful authority, or was beyond the authority conferred upon them by law, or taken without compliance with the conditions precedent which are prescribed by law to be complied with before their power to act comes into legal existence. 20 C.J. 888. It might also be observed that the action of an administrative body upon purely judicial questions cannot ordinarily preclude injured or aggrieved persons from resorting to the courts for the protection of their constitutional or legal rights. See State ex rel. Ellis, Atty. Gen., v. Gibson, 48 Fla. 162, 37 So. 651. Thus it was held in Spafford v. Brevard County, supra, that, ‘where the sovereign power of eminent domain is delegated with limitations or conditions upon the exercise of the right, the owner of property sought to be taken under such delegated authority has a right to be heard in an appropriate tribunal upon the question of whether delegated authority is being duly exercised in taking his property.’ See also 20 C.J. 622.
“While the Legislature may, in providing for the condemnation of private property, determine in the first instance whether the use for which it is proposed to allow the condemnation is a public use, and such determination will be accorded great weight by the courts, this legislative determination is not final. It is universally held that whether a particular use is public or not is a judicial question. Lewis, Em. Dom. (3d Ed.) § 251; 20 C.J. 549 et seq.; 10 R.C.L. 29, 30; Sears v. City of Akron, 246 U.S. 242, 38 S.Ct. 245, 62 L.Ed. 688; Spafford v. Brevard County [92 Fla. 617, 110 So. 451,] supra. See also note in 22 L.R.A. (N.S.) pages 23 and 50. But Nichols on Eminent Domain, departing somewhat from the accepted rule, says that the real question for the courts to decide is not whether the proposed use is a public one, ‘but whether the legislature might reasonably consider it a public one.’ This is but another way of saying that all reasonable presumptions will be indulged by the courts in favor of the validity and constitutionality of the legislative determination, but the courts must in the end determine the question. They cannot escape it under our constitutional system of *622 government. The Legislature cannot, under the guise of the exercise of the vast public and sovereign power of eminent domain which can only be exerted for a public purpose, take without his consent one citizen’s property and give it to another for his mere private use, even though compensation be paid. Cooley’s Const.Lim. (8th Ed.) 1124; 10 R.C.L. 27; 20 C.J. 548; note to In re Tuthill [163 N.Y. 133, 57 N.E. 303], 49 L.R.A. 781. To do so would also come in conflict with the Fourteenth Amendment to the Federal Constitution, as a deprivation of property without due process of law. O’Neill v. Leamer, 239 U.S. 244, 36 S.Ct. 54, 60 L.Ed. 249; Fallbrook Irrigation Dist. v. Bradley, 164 U.S. 112, 17 S.Ct. 56, 41 L.Ed. 369.
‡ % % ‡
“Sections 2281 et seq., Comp.Gen. Laws, sections 1503 et seq., Rev.Gen. Stats., providing for condemnation proceedings by counties, unlike the general statute on the subject, does not require the petitioner to allege that the property sought to be taken is necessary for the purpose for which it is sought to be taken. But Lewis (section 600) says that, though the statute bg silent on the subject of necessity, the Constitution impliedly forbids the taking for public use of what is not necessary for such use, and that ‘the power to take is, in every case, limited to such and so much property as is necessary for the public use in question, and that the owner is entitled, either in the proceedings to condemn or otherwise, to be heard upon this question.’ A long list of cases is cited in the footnotes to sustain this proposition. See also 10 R.C.L. 184, 185, and note to Hayford v. Bangor [102 Me. 340, 66 A. 731], 11 L.R.A.(N.S.) 943 et seq.
“As to the practice for determining the question of necessity, and other preliminary questions, the learned author (Lewis’ Em.Dom. §§ 589 and 602) says:
“(589) ‘As already observed, the questions which may be litigated upon the application will depend upon the statute. Where the statute permits an application to the court in a particular manner and upon certain conditions, the court necessarily has power to determine whether the conditions exist or have been complied with, and whether the application has been made in proper form. If the manner of determining these questions is pointed out in the statute, that method will control. Otherwise the court may adopt any of the usual modes of determining such questions. The adjudications upon such questions will be as binding as adjudications in any other cases, and the same questions cannot be again litigated between the same parties.
“ ‘Where the application is to a court, the better practice clearly is that all objections which go to the right of the petitioner to maintain the proceedings should be determined before the assessment of damages is entered upon. Numerous cases are cited in the margin in which this practice is enjoined, commended or followed. In a few of the cases cited, the statute expressly provided for such preliminary hearing. In one of the cases, where the statute did not so provide, the court says: “The statute does not specifically provide what issues may be raised upon the motion to condemn, but it is utterly unreasonable to say that the defendant must be notified when the motion to condemn his land will be made, and yet when he appears he cannot be heard to show that the plaintiff has no corporate existence, or that it has no authority to condemn the particular property for its use, or that it can only condemn upon certain conditions, which have not been complied with, or under certain cir- *623 ciimstances which do not exist. The policy of the law generally is to have all matters arising out of one controversy settled in a single suit, and this ought to be so, especially in a proceeding the effect of which is to take the defendant’s land against his will and invest the plaintiff with a fee simple title to it.” ’
“(602) ‘Some statutes require the question of necessity to be determined by the commissioners or jury. Under some statutes the mode of exercising the power of eminent domain is such that there is no opportunity to raise the question, except by a bill to enjoin the condemnation or disturbing the possession of the property, or in some other collateral suit. But when the application is to a court and the statute is silent as to how the question shall be made or determined, it is a preliminary question to be decided by the court before entering upon the assessment of damages. If the owner appears and does not deny the necessity, it should be taken as admitted. If the necessity is denied, the burden is on the company to establish it.’
“The author cites numerous cases in support of the text. We consider the views stated by him as sound, and our statutes, as we have already observed, strongly imply that all preliminary questions are to be settled by the court before impaneling a jury to try the question of compensation.”
We subscribe to and adopt these views as determinative of the issues on this appeal.
The stricken portion of the answer herein presents defenses which, if ascertained to be true, would clearly prohibit the District from condemning to its use fee simple title to the subject property. It would limit the interest or estate to be acquired to a permanent easement for the public use or purpose stated by the petition.
 There is no logical difference between the well-recognized illegality in taking a greater quantity of property than is necessary to serve a particular public use and that of taking a greater interest or. estate therein than is required for the contemplated use. In the latter aspect it is simply a matter of degree rather than of substance. In so holding we are cognizant of and adhere to the rule that in the absence of a clear showing of oppression, actual fraud, or bad faith the trial court is not entitled to invade the discretion of the condemning authority with respect to the extent of the use or the time during which' it may be enjoyed. This rule will apply, of course, in the event it is determined that the petitioner herein is entitled, as the landowner insists, to acquire no greater interest than an easement to serve the public purpose stated by the petition. State Road Department of Florida v. Southland, Inc., Fla.App.1960, 117 So.2d 512; Rott v. City of Miami Beach, Fla. 1957, 94 So.2d 168; Peavy-Wilson Lumber Co. v. Brevard Co., 1947, 159 Fla. 311, 31 So.2d 483, 172 A.L.R. 168.
Those allegations of the answer which are designed to provide a basis for a limitation upon the length of time during which an easement — serving an admittedly proper public use — should be permitted to continue in effect poses such indefinite factors as to make it impractical to produce a sound basis for the award of damages on that theory. These allegations are indeed inconsistent with those which admit the power of the petitioner to condemn a perpetual easement for the stated use. Assuming it is determined that the extent of the interest that may be appropriated herein is an easement upon the land, it may be that in course of time the necessity therefor would cease to exist. It must be presumed that when that time arrives the party enjoying the use will voluntarily relieve the property of the easement or, failing that, that the easement will become extinguished by operation of law. These are matters, however, which can be determined only in the light of facts and circumstances yet to transpire. If in accordance herewith it *624 should be held that the petitioner is entitled to acquire a permanent easement, the compensation paid to the landowner must necessarily be predicated on the permanency of the use. It would patently be inconsistent in the same proceeding to both compensate the landowner for a permanent burden upon his property and limit the use in point of time.
The District’s brief insists that it will not be unjustly enriched by acquisition of fee simple title as sought by the petition. It points out that it can only acquire that title by paying for it at the fair market value. It observes that an increase in value will undoubtedly occur when the land is converted from marshland to dry land but that such will be due completely to expenditures of the United States Government, and further, that “the only manner in which these expenses may be recouped will be through the sale of the filled land,” and that “any profit, meaning any increase in the sales price of the land by the Navigation District over the price which the Navigation District paid the appellant, will serve to decrease the tax burden of the taxpayers of the state of Florida.” This argument is unsound and pinpoints the abuse of power that results from the attempt to acquire a greater interest than that which is necessary for the contemplated public use. The anticipated result, however beneficial to the taxpayers generally, is immaterial and irrelevant to the question of the power of eminent domain and the extent to which it may be exercised.
Chapter 14723, Acts of 1931, creating the Florida Inland Navigation District and defining its powers, does not attempt to specify the procedttre to be followed in the exercise of the power of eminent domain granted to it. It authorized the Board of Commissioners of the District to obtain “by condemnation” and to furnish free of cost to the United States of America “suitable areas for the deposit of dredged material in connection with the work of improving and/or constructing the aforementioned waterway and in connection with the subsequent maintenance thereof.” See Section 7(b), footnote 1. That provision clearly relates to the Inland Waterway mentioned in Section 7(a) of the Act (footnote 1) which authorizes the Board of Commissioners of the District to furnish free of cost to the United States “a Right-of-way along, near or adjacent to (as the said Board shall determine pursuant to requirements of the United States of America in constructing or maintaining said Inland Waterway) that certain Inland Waterway and/or canal from Jacksonville to Miami, Florida, in said district,” etc. From a careful examination of the Act, the conclusion' is inescapable that the District has no independent authority to furnish free of cost to the United States of America any title or interest in property, for the construction or maintenance of the Inland Waterway, other than that which is designated by the United States of America as necessary for the purpose. This limitation on the power of the District is further accentuated by the provisions of Section 6 of Chapter 14723, declaring its purpose to be the performance of all things necessary to comply with the conditions imposed upon “local interest” by the Congress of the United States of America in its Rivers and Harbors Act approved January 21, 1927, 44 Stat. 1010, as amended by the Rivers and Harbors Act approved July 3, 1930, 46 Stat. 918, which authorizes the improvement and construction, under the direction of the Secretary of War and the supervision of the Chief of Engineers, of an inland waterway following the coastal route from Jacksonville, Florida, to Miami, Florida, in accordance with reports submitted December 14, 1926, in House Document numbered 586, Sixty-ninth Congress, second session, and in Senate Document numbered 71, Seventy-first Congress, Second Session.
For the reasons stated the judgment appealed is reversed and this cause remanded for proceedings consistent herewith.
Reversed and remanded.
WIGGINTON, Chief Judge, and CARROLL, DONALD K., J., concur.

. “3. Further answering, the defendant denies that the fee simple title to the land sought to be condemned is necessary for the public use or purpose as a spoil area for the deposit of dredged material in the work of moving and/or constructing said waterway or in connection with the subsequent maintenance thereof, and alleges that the fee simple title to said land was not contemplated nor required by the United States, nor any Act of Congress, nor any report mentioned in such Acts, but that the United States required an easement only on said land and not the fee simple title, as will more fully appear from letter dated January 21, 1960 from the Chief, Real Estate Division of the Jacksonville United States Engineer District, to said Florida Inland Navigation District and form of easement for a spoil area on defendant’s said land to be executed by said Florida Inland Navigation District to the United States; copies of said letter and easement are hereto attached and made parts of this Answer and constitute parts of the files and records of the District Engineer of the Jacksonville United States Engineer District which represents the United States in this connection; that although the petitioner is seeking to condemn and seize the fee simple title to defendant’s lands it has agreed to convey to the United States, and the United States has agreed to accept, said easement; that thereby the dominant fee simple title to the defendant’s land would be left in the petitioner, subject only to said easement; that the petitioner, by agreeing to convey only an easement, and the United States, by agreeing to accept only an easement for the deposit of dredged material, agreed that an easement and not the fee simple title is all that is reasonably necessary to answer and satisfy the public use or purpose of a spoil area for the deposit of dredged material and the petitioner thereby became estopped to condemn more than an easement, and the condemnation of the fee simple title under such circumstances amounts to the gross abuse of the petitioner’s discretion and amounts to oppression and bad faith.
“4. Further answering, the defendant alleges that the petitioner does not own nor maintain any waterway; its sole functions are to acquire the necessary right of way and to furnish suitable areas for the deposit of dredged materials in connection with said waterway and its maintenance as required by the United States, and to levy and apply taxes toward the servicing of the bonds issued for the purchase of said waterway; and the petitioner has no other duties or functions to perform whatever that would involve the use of the fee simple title to defendant’s land for any public use or purpose, either as a spoil area for the deposit of dredged material in the work of moving and/or constructing said waterway or in connection with the subsequent maintenance thereof or otherwise.
*619 “5. Further answering, the defendant alleges that the defendant’s said land is valuable land and that the dominant, fee simple title, even subject to said easement, has considerable value; and further that the length of time said land can be used as a spoil area for the deposit of dredged material is necessarily limited; that the usual height to which dredged material is deposited is approximately 6 feet above sea level; that after dredged material has been deposited to a height of approximately 6 feet above sea level on said land it would cease to have any value as a spoil area and could not be used for such purpose; that the easement which the petitioner has agreed to convey to the United States, and the United States has agreed to accept, takes that into account by expressly providing, among other things:
“ ‘Reserving, However, to the party of the first part, its successors or assigns, all rights and privileges in said tract of land as may be used and enjoyed not interfering with or abridging the rights and easements herein conveyed to the party of the second part. * * *
“ ‘The right, power and authority, and the release hereinabove set forth, shall be in full force and effect indefinitely, provided that, if the Engineer shall have no further need for the aforesaid tracts he shall so inform the Grantor, and the right, privilege and authority herein-above conveyed shall thereupon be terminated.’
Tliat after dredged material has been deposited to a height of approximately 6 feet above sea level and the United States has no further need for the said land, and after the District Engineer of the United States shall so inform the . petitioner, the right, privilege and aur thority conveyed by said easement will thereupon terminate and the petitioner • would then own the fee simple title to valuable waterfront property free and clear of said easement; that to permit the petitioner to condemn 'and seize the foe simple title to defendant’s said land • under said circumstances would open the, door to abuses and pave the way for petitioner to engage in speculation contrary to law and to sell the defendant’s ; land at a great profit to itself and irreparable loss to the defendant; or, in ■ other words, the petitioner would con-. demn and seize and force the defendant - to sell against his wishes the fee sim-. plo title to defendant’s land under the guise of a public use as a spoil area and then convey an easement only for such purpose and retain the dominant,' . fee simple title for no other use or purpose than as a speculation for sale at a profit in the future after the land is" filled to a height of approximately 6 feet-, above sea level; that thereby the- petitioner would become unjustly and unlawfully enriched at the expense and loss of the defendant.”

. “Section 6. It is the purpose and intent of this Act, and of said Chapter 12026, Laws of Florida, 1927, that the Board of Commissioners of the Florida Inland Navigation District perform and do all things which shall be requisite and necessary to comply with the requirements and conditions imposed upon ‘local interest’ by the Congress of the United States of America in its Rivers and Harbors Act approved January 21st, 1927, as amended by the River and Harbor Act approved July 3, 1930, authorizing the improvement and/or construction under the direction of the Secretary of War and the supervision of the Chief of Engineers of an inland waterway in general 100 feet wide and and 8 feet deep at local mean low water, following the costal route from Jacksonville, Florida, to Miami, Florida, in accordance with reports submitted December 14, 1926, in House Document numbered 586, Sixty-ninth Congress, second session, and in Senate Document numbered 71, Seventy-first Congress, second session and in order that the said Secretary of War and the said Chief *617 of Engineers may accomplish at the expense of the United States the works of improvement adopted and authorized by the aforementioned Acts of Congress, the Board of Commissioners of the said Florida Inland Navigation District is authorized, empowered and directed to obtain by donation, purchase or condemnation and convoy and/or cause to be conveyed, free of cost to the United States, the necessary right-of-way property, and in addition thereto suitable areas for the deposit of dredged material in connection with the work and its subsequent maintenance, all as contemplated and required by the Acts of the United States Congress and the documents and the reports mentioned in said documents as hereinabove cited.
“Section 7 (a) The Board of Commissioners of said District shall proceed without delay to obtain by gift, donation, purchase or by condemnation and shall furnish free of cost, to the United States a Right-of-way along, near or adjacent to (as the said Board shall determine pursuant to requirements of the United States of America in constructing or maintaining said Inland Waterway) that certain Inland Waterway and/or canal from Jacksonville to Miami, Florida, in said District, which has heretofore been purchased of and from the Florida Coast Line Canal and Transportation Company and/or from its successors in title and/or assigns and has been transfered to and is now owned by the United States of America, all pursuant to the provisions of Chapter 12026, Laws of Florida, 1927.
“(b) Said Board of Commissioners shall also acquire or obtain by gift, donation, purchase or by condemnation and shall furnish, free of cost, to the United States of America suitable areas for the deposit of dredged material in connection with the work of improving and/or constructing the aforementioned waterway and in connection with the subsequent maintenance thereof.
“(e) That the said Board shall also obtain by gift, donation, purchase or by condemnation and shall furnish, free of cost, to the United States, any property, property right, easement, riparian right, interest in property, outside of said Right-of-way area that may be necessary to the United States of America for the construction, maintenance and/or operation of said Canal and/or Canal to be constructed within said Right-of-way area by the United States of America.
“Section 8. The said Board of Commissioners of said District is hereby authorized and empowered to exercise and to use the right of eminent domain and may condemn for the use of said District and/or to effect the purposes of this Act any and all lands, easements, areas for deposit of dredged material, right-of-way, riparian rights and/or property rights of every description required for the public purposes and powers of said Board of Commissioners, as herein granted.
“Such condemnation proceedings shall be maintained by and in the name of the Florida Inland Navigation District, a special taxing district under the laws of the State of Florida, and the procedure shall be that prescribed and set forth in Section 1503, et seq., Revised General Statutes of Florida, 1920, prescribing the procedure for condemnation by Counties, and the same rights and powers shall accrue to said District under such procedure defined and set forth as accruing to the Counties in said Section 1503 et seq., and/or any other lawful authority pertaining thereto, and the said Florida Inland Navigation District and its Board of Commissioners is and are hereby vested with power and authority to pay such judgment of compensation awarded in any such proceedings out of any fund available for the purchase of Right-of-way, areas for deposit of dredged material, or other property under the provisions of this Act.”