## STATE ROAD DEPARTMENT v. SOUTH PUERTO RICO SUGAR CO., et al.

No. 452-67.

Circuit Court, Indian River County.

March 29, 1968.

Jack W. Pierce, Tallahassee, for the petitioner.

George H. Salley, Miami, for the defendants.

## D. C. SMITH, Circuit Judge.

This cause has come on for trial before the court on the petition filed herein by the State Road Department of Florida and the answer to such petition filed by the South Puerto Rico Sugar Company, a corporation, on the issue framed by such pleadings on the necessity of the petitioner acquiring a fee simple absolute title to the land of such defendant. The petitioner filed a declaration of taking and a date was set for hearing thereon.

The State Road Department of Florida, as petitioner, and the South Puerto Rico Sugar Company, as defendant, are the only parties involved in this issue and they will be referred to herein as petitioner and defendant.

The petitioner alleges that —

It is exercising its right of eminent domain by virtue of the authority granted it in Florida Highway Code and Chapters 73 and 74, Florida Statutes. The lands hereinafter described and the interest sought to be acquired are necessary for public use, for the public purpose of constructing and maintaining a limited access state highway, its approaches and service roads, same having been designated as State Road No. 9 (I-95), for use of the general public.

The defendant alleges that —

This defendant and its predecessors in title have for many years owned the parcel of real property which the petitioner seeks to condemn in these proceedings that is known and described as SRD #173. 1. The said parcel of real property constitutes a small piece or portion from the approximate center of a railroad right-of-way extending some 16 miles from the 47 odd thousand acres of land owned by this defendant in Indian River and Brevard Counties, Florida, adjacent to the Town of Fellsmere to the FEC railway trackage at Sebastian, Florida. Upon this railroad right-of-way this defendant's predecessors in title operated a standard gauge railroad from about 1911 until the 1950's, at which time regular operations of said railroad ceased. Subsequent to the cessation of operations the railway tracks upon the right-of-way were removed and sold by one

of this defendant's predecessors in title. The description contained in the petition and declaration of taking of SRD #173.1 refers erroneously, scandalously and with prejudicial purpose to the "Fellsmere abandoned railroad."

In truth and in fact, the petitioner, through its agents and employees, and during the course of negotiations extending over a period of over two years last past, is well aware of the fact that although the Fellsmere railroad is not presently operated, it has by no means been abandoned by this defendant.

As a matter of fact, petitioner has been advised that in certain proceedings lately pending in this very Court being styled No. 5534 at law in the Circuit Court of the Ninth Judicial Circuit in and for Indian River County, Florida, this defendant protected and preserved its said right-of-way by defending an attempt on the part of the Sebastian River Drainage District to condemn a crossing thereof without making adequate provisions for the restoration and relaying of its railroad tracks and the orders of this Court in said case entered clearly confirm and corroborate this fact.

Moreover, on the 10th day of February, 1965, there was recorded in Official Record Book 208 at page 457 of the Public Records of Indian River County, Florida, a survey, sketch or plat setting out the precise and exact legal description of said right-of-way.

For many years the Tax Assessor of Indian River County, Florida, has assessed the said 16-mile right-of-way and this defendant has paid substantial taxes as the result of said assessment to preserve and maintain its ownerhip of said right-of-way and track; the last such assessment for which figures are available at the present time was in 1967 when the 277.11 acres constituting said right-of-way were assessed at $96,000 and this defendant paid a tax of $1,530.04 thereon.

Obviously, the attempted condemnation of Parcel SRD #173.1 with no provisions whatsoever made for constructing a bridge over or an underspass under this defendant's railroad right-of-way as attempted by said declaration of taking constitutes a confiscation not only of that parcel of real property specifically described as SRD #173.1, but also of an entire 16 miles of railroad right-of-way connecting this defendant's lands adjacent to the Town of Fellsmere with the FEC railroad at Sebastian, Florida.

Furthermore, this defendant alleges that said 16-mile strip of land has no usable value or purpose other than to serve as a right-of-way for a railroad and upon which in fact for many years this defendant's predecessors in title did operate a railroad and upon which in the future it is the intent and purpose of this defendant again to operate a railroad at such time as the development of its operations upon its said lands adjacent to the Town of Fellsmere in its opinion justify.

This defendant denies the allegations of the first paragraph of said petition and says it is untrue that it is necessary to acquire the fee simple title to Parcel SRD #173.1 for the public purpose of constructing and maintaining a limited access state highway as alleged in said paragraph, and says that in truth and fact the State Road Department

of Florida can construct and maintain a limited access state highway, its approaches and service roads, by acquiring an easement over said parcel and constructing a bridge across the same just as it does in the case of any highway or other railway right-of-way which it is necessary for said highway to cross.

The petition upon which the declaration of taking is based discloses that the proposed taking of the fee simple title to Parcel SRD #173.1 and the resultant severance and destruction of this defendant's long established railroad right-of-way running from its properties adjacent to the Town of Fellsmere in Indian River and Brevard Counties to the FEC Railroad at Sebastian, Florida, without preserving and maintaining said right-of-way is arbitrary and capricious and constitutes an abuse of discretion on the part of the petitioner. The proposed taking of this defendant's property exceeds the statutory authority conferred upon the State Road Department and is wantonly injurious in that if the fee simple title to Parcel SRD #173.1 is taken in these proceedings and no provision is made to restore the defendant's railroad across said highway, then and in that event, the petitioner has deprived this defendant of an asset worth hundreds of thousands of dollars, one upon which this defendant has spent thousands of dollars in acquiring, preserving and maintaining the same, and one the replacement cost of which would be millions of dollars because once this defendant's railroad right-of-way to Sebastian is irrevocably severed, no other rail facilities can be reached from its said properties within 50 to 60 miles. Moreover, as a private corporation, this defendant does not possess the power of eminent domain and would in all probability be unable to acquire the necessary rights-of-way to reach rail facilities in any other location. This defendant's railway right-of-way has been maintained by it and its predecessors in title as part of a long existing and long range plan of development of its said properties adjacent to the Town of Fellsmere which contemplates the ultimate erection of a citrus concentrate and packing plant and a vegetable packing plant upon its aforesaid properties. Such plan has as a component and indispensable part of its overall development of said properties the restoration and reactivation of railroad transportation over SRD #173.1.

This defendant, in view of the premises, asserts that the petition seeks to deprive this defendant of its property in violation of Section 12 of the Declaration of Rights of the Constitution of the State of Florida, contrary to the prohibitions of Section 1 of the Fourteenth Amendment to the Constitution of the United States, and in excess of the statutory authority conferred by Chapters 73 and 74 Florida Statutes. The granting of the petition would constitute a taking of this defendant's property not only without due process of law but such a taking would in fact be so wantonly injurious to this defendant as to justify this honorable Court not only in denying the declaration of taking but the proposed injury being, as above set forth, irreparable, unnecessary and violative of the State and Federal Constitutions, entitles this defendant to a permanent injunction against the petitioner unless and until petitioner incorporates a bridge or overpass across this defendant's said property which will have the effect of preserving and maintaining intact its aforesaid right-of-way.

Recognizing that this proceeding, although an action at law, is in its nature equitable and being willing to do equity in the premises, this defendant hereby asserts that if the petitioner revises and amends its petition and its plans for State Highway 9 (I-95) and will agree to construct a bridge or overpass over this defendant's property upon due notice from this defendant or its successors in title that the railroad tracts are to be relaid thereon and will preserve and maintain intact its railway right-of-way, it will forthwith withdraw its objections to the order of taking. In other words, this defendant is willing to permit the immediate taking of an easement across its said right-of-way and the highway construction to be entered into at once provided such construction contemplates and will cause to be constructed a bridge or overpass across its said right-of-way and such right-of-way to be preserved intact despite the fact that there may be a temporary severance thereof. A suggested form of stipulation to achieve this purpose is attached hereto as Exhibit A and made a part hereof by reference.

This defendant alleges that its property sought to be condemned by the petitioner herein has a real and ascertainable value to it in excess of $500,000 and that if deprived of this property by the petitioner, its just compensation will be in excess of such amount.

Further answering the petition, this defendant categorically denies the allegations of the said petition and specifically denies the allegations of authority and necessity contained in paragraph First thereof and the allegation of necessity contained in paragraph Sixth thereof.

The court has heard the witnesses presented by the respective parties at the trial and their attorneys have filed briefs.

The court finds from the evidence that the defendant and its predecessors in title have since 1914 owned a strip of land 100 and 200 feet wide and 17 or 18 miles long, constituting a railroad right-of-way and connecting defendant's 45,000 odd acre tract of land in western Indian River and Brevard counties with the FEC Railroad at Sebastian. (Defendant's Ex. 4) Although no trains have run over the route since 1954 when the rails were taken up, the defendant and its predecessors have not abandoned this right-of-way, but on the contrary, have consistently and continually protected and preserved it intact. Defendant has paid ad valorem taxes assessed each year upon it, in recent years at the rate of some $1,500 per year on an assessed valuation of $96,000. (Defendant's Ex. 1 and 2) About three years ago defendant caused to be recorded among the public records of Indian River County an engineer's survey of the right-of-way made at considerable expense. (Defendant's Ex. 3) Defendant requires any occupant of any portion of the right-of-way to execute and maintain in force a lease respecting such occupancy. (Tr. 27 to 39) The proposed route of Interstate Highway I-95 will traverse the aforementioned railroad right-of-way at about its mid-point (Defendant's Ex. 4) Defendant is now and has

been during recent years substantially enlarging the development of its 45,000 acres and expects by the end of 1968 to have 9,000 acres planted in citrus and, ultimately, to have a total of 10,000 acres planted in citrus. Defendant is having a study made at the present time as to the advisability of erecting a citrus concentrate plant and presently is of the opinion that its operation will justify the erection of such a plant in 1971 or 1972. Defendant's present intentions are that if a citrus concentrate plant is erected and it has the volume of freight which it now believes it will have, to recommend the establishment of a railroad siding.

When defendant's railroad right-of-way was used for the operation of a railroad, it was devoted to a public use. Such right-of-way has not been abandoned and is now being held for future use as a railroad right-of-way and when it is so used it will be devoted to a public use. From the evidence in this case, defendant's railroad right-of-way must now be considered as if it were being used for the operation of a railroad. Land devoted to a public use may be taken by eminent domain, but there are limitations on such right.

Nichols on *Eminent Domain*, Revised 3rd Edition, volume 1, page 212, §2.2(1), states the law as follows —

> There are many cases in which land in public use may unquestionably be taken under a general delegation of the power of eminent domain. Express authorization to impair or destroy the prior use is the best authority, but is not required if the nature of the proposed use is such as to confer the power by necessary implication. A public way, whether it be highway, railroad or canal, cannot in the nature of things be constructed for any considerable distance through an inhabited country without crossing other public ways. Accordingly, general authority to lay out and construct public ways and to take the necessary land justifies the condemnation of crossings over other ways so far as it can be done without destroying the use of the original way, and subject to the condition that the power is to be exercised so as to interfere as little as possible with the original use. Thus, under a general power to take land by eminent domain:
>
> (a) A highway can be laid out across a railroad, although it cannot be laid out across a railroad in such a way as to exclude the railroad from the use of its location.
>
> (Numbers indicating footnotes omitted.)

In 29A CJS, page 337, *Eminent Domain*, §78, appears this statement of the law —

> It is competent for the legislature to authorize the laying out or extension of streets, alleys or highways across the right of way and other lands of a railroad company, and express authority to this effect

is found in some jurisdictions. Railroad property may be condemned for street purposes under proper statutory authority even though the two uses cannot exist together. It has been held that the necessity of condemning an easement for a street across railroad property is a legislative question not subject to judicial review.

*Necessity of special statutory authority.* Where the beneficial use of its property by a railroad company is not materially interfered with by the extension of streets or highways across its tracks or right of way or other property no special statutory authority is necessary to the exercise of this power, and the fact that such additional use of the right of way will entail more care and expense on the part of the railroad in protecting the public is immaterial; but in accordance with the general doctrine governing the taking of property already appropriated to public use, land once appropriated by a railroad company for a public use cannot, in the absence of statutory authorization which is express or necessarily implied, be condemned for streets or highways if such purposes would be inconsistent with, and impair or destroy, its use for railroad purposes. This rule applies whether the railroad company acquired its lands by purchase or eminent domain, and the fact that the property is not in actual use is immaterial if it will be needed in the future.

In applying these rules it is uniformly held that a general authority to lay out streets or highways authorizes the extension of a street or highway across a railroad track, provided the use of the right of way for railroad purposes will not be thereby destroyed or essentially impaired.

(Numbers indicating footnotes omitted.)

See also 26 Am. Jur. 2d, page 758, *Eminent Domain,* §101.

In Cincinnati W. & M. Ry. Co. v. City of Anderson, 139 Ind. 490, 38 N. E. 167-168, the court stated —

Under the general law permitting cities to establish streets, we have no doubt of the implied power to extend streets transversely across the right of way of a railroad, when in doing so the uses for which such right of way is employed are not materially injured or destroyed, and where such uses and those for a street may co-exist without impairment of the first uses. But where such uses cannot so coexist, or where the first use is materially impaired or destroyed, it is well settled in this state and elsewhere that the second public use will be denied.

In City of Norton v. Lowden, 1936, Circuit Court of Appeals, Tenth Circuit, 84 Fed.2d 663, the city was endeavoring to open a street at grade across the station grounds and yards of the appellee. This was permanently enjoined by the trial court. On appeal, the injunction was modified to permit the city to go over or under the appellee's tracks. The following appears from this opinion —

This controversy arises from an effort of the City of Norton to open a street at grade across the station grounds and yards of the Rock Island Railway . . .

In 1935 the city proposed to open First Street across the tracks, and procured the appointment of commissioners to assess the damage. Before the commissioners could meet, this action was brought to enjoin the proceedings. After a trial a decree was entered perpetually enjoining appellant from "appraising, valuing or condemning the property of the plaintiffs for any purpose and from extending or opening, or undertaking to extend or open First Avenue in the City of Norton through, over and across the property of the plaintiffs." This appeal is from that decree . . .

. . . statutes delegating to agencies of the state — municipalities, railroads, etc., — the right of eminent domain in general terms, do not authorize such agencies to condemn property already devoted to public use, if such condemnation will substantially destroy or materially interfere with the present public use. Power to destroy or materially interfere with an existing public use must be found in a specific authorization of the legislature. On the other hand, if the second public use does not substantially destroy or materially interfere with the existing public use, property may be condemned for the second public use under a statute conferring the power of eminent domain in general terms . . .

The decree below will be modified so that the appellant is enjoined only from pursuing its present effort to condemn the surface of the ground now occupied by appellees' tracks and platform. The decree should make it clear that appellees' present public use includes subjacent and lateral support for their structures, together with reasonable means of ingress and egress thereto; that appellant is not enjoined from condemning that part not now occupied, nor from opening the street by a thoroughfare over or under appellees' tracks and platform.

In City of Shreveport v. Kansas City, S. & G. Ry. Co. et al, 1930, 169 La. 1085, 126 So. 667, the city of Shreveport was proceeding to extend a street across the surface of the defendants' tracks and again the court required the city to go over or under the defendants' railroad tracks. The following appears from the opinion in this case —

The city of Shreveport filed separate suits against four railroad companies operating within the limits of the municipality to expropriate a right of way across their tracks for the purpose of extending Allen avenue from Texas street to Headley street. Attached to the petition filed in each suit is a plat showing the particular property over which the right of way is sought to be acquired.

Plaintiff prayed for a jury of freeholders to try each case, and orders were issued by the district court for the summoning of the juries for the purpose.

The several defendant railroad companies appeared and filed a pleading in their respective cases, which they called a "motion to rescind order for jury," but which in reality was an answer setting at issue the right of plaintiff to expropriate the property described in the petition, praying that the issue be separately heard and determined, and that the order for a jury be recalled until the right of

plaintiff to expropriate be finally adjudicated. The juries were recalled pending the determination of the question of the right of the plaintiff municipality to expropriate the defendants' property. Subsequently, the defendants filed exceptions of vagueness, on the ground, mainly, that plaintiff's petition failed to disclose whether the street which it sought to open would cross the railroad tracks at grade, by an overpass or by an underpass. These exceptions were heard and overruled.

Later, the four suits were consolidated for the purpose of a trial on the issue of the right of the plaintiff municipality to invoke the expropriation proceedings. The court below, after hearing the evidence and the argument of the parties, rendered a judgment, decreeing the city of Shreveport had the power to expropriate defendants' property, provided the proposed extension of Allen avenue would be built by underpasses or overpasses under or over the railroad tracks, except the north 'Y' track, and denying the municipality the right to construct the proposed street extension over the railroad tracks at grade, except as to the north 'Y' track. All the defendants have appealed.

There is no special legislation authorizing the plaintiff municipality to expropriate defendants' property. Plaintiff's right to do so arises under, and is governed by, the general expropriation laws of the state . . .

The main defense in all the cases is that the property sought to be expropriated is and has been for a long period of time devoted to a public use, and therefore is not subject to expropriation because the taking of the property by the municipality is inconsistent with, and will practically destroy, the existing public use.

On considering defendants' main ground of defense, we find that the plaintiff municipality is not seeking to acquire the ownership of defendants' property. All that plaintiff is demanding is the right to extend one of its thoroughfares across the property. Under the law, plaintiff is entitled to that right, provided the defendants are not thereby deprived of the beneficial use of their property. Town of Eunice v. La. Western Ry. Co. 135 La. 882, 66 So. 257.

We think the facts as shown by the record bring the case within the rule stated. As we see it, neither of the ways prescribed by the judgment appealed from for the extension of the proposed street across defendants' property can to any appreciable extent deprive the defendants of the use of their tracks. In fact, the evidence shows that the proposed street can be extended across the railroad yards without causing the removal or changing of any of the defendants' tracks. The evidence also shows that, by the use of overpasses or underpasses, the operation of defendants' trains will not be interfered with, except, possibly, to the extent of some delays on one track owned by the Kansas City Southern Railway Company. But that company itself is building a track across the tracks of the defendant railroad companies at a point not far from the place the municipality has selected for constructing the proposed street extension. While the operation of this intersecting track will undoubtedly cause some danger and inconvenience to the railroad companies owning the other tracks, no pretense is made that those companies will thereby be deprived of the beneficial use of their property . . .

> For the reasons assigned, the judgment appealed from is affirmed, at the cost of the appellants.

The court in the case now under consideration is not unmindful that a presumption exists in favor of the determination of the question of necessity by the grantee of the power of eminent domain and that such determination will ordinarily not be interfered with, if it is exercised in good faith and is not capricious, wantonly injurious, or in the absence of fraud or gross abuse of discretion. 12 Fla. Jur. page 32, *Eminent Domain*, §59, and authorities cited. The question whether any necessity exists for taking a particular property is ultimately a judicial question on which the owner is entitled to be heard. 12 Fla. Jur. page 42, §59, and page 84, §130, and authorities cited. In this case, the petitioner is seeking to acquire a fee simple absolute title to the land of the defendant rather than an easement for the construction of an overpass or underpass. In Miller v. Florida Inland Navigation District, Fla. App. 1961, 130 So.2d 615, where the petitioner was seeking to condemn a fee simple title rather than an easement, the court stated —

> There is no logical difference between the well-recognized illegality in taking a greater quantity of property than is necessary to serve a particular public use and that of taking a greater interest or estate therein than is required for the contemplated use. In the latter aspect it is simply a matter of degree rather than of substance. In so holding we are cognizant of and adhere to the rule that in the absence of a clear showing of oppression, actual fraud, or bad faith the trial court is not entitled to invade the discretion of the condemning authority with respect to the extent of the use or the time during which it may be enjoyed. This rule will apply, of course, in the event it is determined that the petitioner herein is entitled, as the landowner insists, to acquire no greater interest than an easement to serve the public purpose stated by the petition.
>
> (Citation of authorities omitted.)

In the case now before the court, there is no showing of any bad faith or fraud on the part of the petitioner. In fact, neither is asserted. In the court's opinion, the action of the petitioner prior to filing and in filing its petition merely shows that the petitioner is proceeding with the matter at hand from its point of view and is appropriately leaving the determination of the involved question of necessity to the court. It is apparent from the evidence that if the petitioner acquires a fee simple absolute title to defendant's land, parcel #173.1, the defendant's 16 mile long railroad right-of-way, which the defendant and its predecessors in title have owned and paid taxes on for over 50 years, will be completely destroyed as a railroad right-of-way. It is

also apparent that the petitioner could acquire an easement for an overpass or underpass, over or under defendant's railroad right-of-way, and the complete destruction of the defendant's railroad right-of-way would be averted. In the court's opinion, to permit a complete destruction of defendant's railroad right-of-way would amount to a gross abuse of discretion, would be capricious and wantonly injurious, and wholly unnecessary. The court takes judicial notice of the fact that the interstate highways being built by the petitioner frequently go over or under exising railroads. As the court stated in State Road Department of Florida v. Southland, Inc., Fla. App. 1960, 117 So.2d 512-514 —

> The abuse of power by misguided, though well intentioned, administrative bureaus, boards, departments or agencies of government poses an ever present threat to the very foundation of our democratic institutions. Though such abuses occur infrequently, their occurrence has a devastating effect upon the rights of individual citizens adversely affected thereby. Thus the courts must be ever zealous in protecting the basic rights of the governed against the improper exercise of governmental power perpetrated under the cloak of lawful sanction.

Petitioner points out that §338.04, Florida Statutes 1967, requires that all property rights acquired for limited access facilities shall be in fee simple. Certainly such section is not subject to such a strict interpretation that it would require the complete disruption of all railroads, canals or other public ways which might be crossed by limited access highways running throughout the state.

The court finds from the evidence that the petitioner has failed to show a necessity for taking the fee simple title absolute to the lands of said defendant designated as SRD #173.1, and that the defendant has proved by a preponderance of the evidence that such attempted taking under the facts disclosed herein constitutes a gross abuse of discretion, is arbitrary and capricious and is wantonly and unnecessarily injurious to the defendant and under the facts disclosed herein, is without lawful authority and is beyond the authority conferred upon the petitioner by law. Brest v. Jacksonville Expressway Authority, Fla. App. 1967, 194 So.2d 658, and Wilton v. St. Johns County, 98 Fla. 26, 123 So.527, 65 ALR 488 (1929).

Upon consideration, it is thereupon ordered and adjudged —

(1) That the petition is dismissed only as to the land described as SRD #173.1 and the defendant, South Puerto Rico Sugar Company.

(2) That the petitioner shall have 60 days from the date hereof within which to file an amended petition as to said SRD #173.1 and the defendant, South Puerto Rico Sugar Company, and such defendant shall have 15 days after receipt of a copy of such amended petition to plead thereto as advised.