DAVIDSON, LISA, Associate Judge,
concurring in part and dissenting in part.
I respectfully concur in part and dissent in part.
The subject property of the condemnation proceedings is a one-story, four unit retail commercial building that has been owned by the Mach family for over three decades. It is uncontroverted that the Mach property is not dilapidated, nor in disrepair. There is no evidence or claim by the City of Hollywood Community Re *1144 development Agency (CRA) that the property constitutes a nuisance.
As such, I concur with the majority’s opinion regarding the validity of taking seventeen feet of the Mach property only because of the eminent domain statute that applies to this case.[1] A review of the record establishes that the CRA met its burden of establishing some evidence to justify the taking of seventeen feet of the Mach property by eminent domain for economic development.
Historical preservation is a valid public purpose which supports the taking of the Mach property rather than the taking of the western facade of the Southern Hotel. Local comprehensive plans must be consistent with the State Comprehensive Plan. See, e.g., § 168.3167(11), Fla. Stat. (Supp. 1992). The State Comprehensive Plan identifies a goal of historic preservation by specifying State policy to “[ejnsure that historic resources are taken into consideration in the planning of all capital programs and projects at all levels of government and that such programs and projects are carried out in a manner which recognizes the preservation of historic resources.” § 187.201(18)(b)6, Fla. Stat. (1985).
I dissent as to CRA’s right to take any more than seventeen feet of the Mach property. Although it is reasonably necessary to locate the parking garage and service entrances on 19th Avenue, it is undisputed that it is not necessary to acquire the entire Mach parcel to accommodate the two driveway openings. Only seventeen feet of the Mach property is needed to accomplish this purpose. The developer proposes to use the balance of the Mach property as a space for a building generator, a Florida Power and Light transformer vault, and 716 square feet of new retail area for a new tenant that would replace the existing retail space on the current Mach family parcel. Under the developer’s initial plans, these uses were accommodated within the thirteen lots already owned by the developer. A condemning authority is not permitted to acquire through eminent domain a greater quantity of property than is necessary to serve the particular public use for which the property is sought. Canal Auth. v. Miller, 243 So.2d 131, 133 (Fla.1970); Miller v. Fla. Inland Navigation Dist., 130 So.2d 615, 623 (Fla. 1st DCA 1961); Knappen v. Div. of Admin., State Dep’t of Transp., 352 So.2d 885, 891 (Fla. 2d DCA 1977). I *1145 respectfully dissent from the majority’s opinion which permits this to occur.

. Florida’s Community Redevelopment Act of 1969 provided for the creation of community redevelopment agencies and vested in them the power of eminent domain. See § 163.330-375, Fla. Stat. (1979). In Kelo v. City of New London, 545 U.S. 469, 488-89, 125 S.Ct. 2655, 162 L.Ed.2d 439 (2005), the United States Supreme Court approved the use of eminent domain to promote economic development as a public purpose, but stressed that each state was free to further restrict its exercise of the takings power. Harry M. Hi-pler, Tax Increment Financing in Florida: A Tool for Local Government Revitalization, Renewal, and Redevelopment, 81 Fla. B J. 66, 67 (Aug.2007). As a result of Kelo, the Florida Legislature passed statutory amendments effective May 11, 2006, severely restricting a condemning authority's power to take private property for economic development. Id.; Ch.2006-11, Laws of Fla. In the past, local governments could legally take private property in a CRA and then sell it to a private developer for private development purposes for the elimination of slum or blight. Id. This can no longer be done. § 73.014, Fla. Stat. (2006). Today, private property taken pursuant to a local government’s taking power must be for uses that historically have had a public purpose, such as roads, utilities, and transportation-related services. § 73.013, Fla. Stat. (2006); see also Hipler, 81 Fla. B.J. at 68. If the current version of the eminent domain statute applied to this case, then the Mach property could not be condemned. § 73.014, Fla. Stat. (2006). However, this statute is not retroactive. Ch.2006-11, § 15, at 214, Laws of Fla.